### The City of Alexandria.[1]

*(District Court, S. D. New York. March 20, 1885.)*

DAMAGE TO CARGO ON LIGHTER—NEGLIGENCE—CUSTOM IN STOWAGE—PERIL OF THE SEA.

> A lighter was loaded at Havana with bales of tobacco, to be taken to a steamer lying out in the harbor. The bales were piled three high above the gunwale, and were not secured in any manner. On the way a sudden gust of wind caused the lighter to career, and some of the bales fell into the sea. Though damaged by water, they were afterwards received on board the ship, and a clean bill of lading given for them, reciting them to have been received in good order and condition, both parties having knowledge of the facts. On the arrival of the ship in the port of New York, suit was brought against her for the damage to the bales. *Held,* that assuming, but without deciding, that the goods taken by the lighter were in the possession of the ship, it was incumbent on the libelants, under the exception of "perils of the sea" in the bill of lading, to show negligence on the part of the lighter; that the evidence showed that the cargo was stowed in conformity with the established usage of the port, and that the bales slid off in consequence of a sudden gust of wind, which was extremely rare; and that, therefore, the loss was by a peril of the sea, and no negligence upon the evidence could be imputed to the lighter, and consequently none to the steamer, even though the lighter were in the steamer's employ, and the loss must be set down to the exceptions in the bill of lading.

In Admiralty.

*Butler, Stillman & Hubbard* and *Stillman & Mynderse,* for libelants.

*A. O. Salter & R. D. Benedict,* for claimants.

BROWN, J. The libel, in this case, was filed to recover $5,120.47 damages for the non-delivery in good order and condition of 399 bales of tobacco, brought from Havana to New York, by the steamer City of Alexandria, in March, 1883. Eighty-six of the bales were damaged by falling into the water, while in course of transportation on a lighter from the pier in Havana to the steamer, about half a mile distant. The bales weighed about 100 pounds each, and were three feet square. The lighter was without deck. There were three tiers piled below the gunwale, and three above. While the lighter was crossing to the

---

[1] Reported by R. D. and Edward Benedict, Esqs., of the New York bar.

steamer, a strong gust of wind from the hills, according to the testimony, caused the lighter to careen, so that some of the upper bales, which were very dry and slippery and not secured, slid off into the water. They were picked up and put on board the steamer the following day, and a clean bill of lading given for them by the agents of the ship, reciting them to have been all received on board ship in good order, both parties having knowledge of the facts.

To entitle the libelants to recover, inasmuch as the damage to the tobacco was not done after it was received on the ship's deck, and as the bill of lading also excepts perils of the seas, it is incumbent on the libelants to show that the injury arose from negligence of the lighter, and also that the possession of the lighter was the constructive possession of the steamer; in other words, that the transportation by the steamer in legal effect commenced at the wharf.

In most of its features the case of *Bulkley* v. *Naumkeag Steam Cotton Co.* 24 How. 386, is very similar to the present. There the vessel was held liable for injury to cotton while on board the lighter. In that case the lighter was unquestionably employed by the master of the ship, and at the ship's expense. The court say:

"Both parties understood that the cotton was to be delivered to the carrier for shipment at the wharf in Mobile, and to be transported thence to the port of discharge. After the delivery and acceptance at the place of shipment the shipper had no longer any control over the property, except as subject to the stipulated freight."

The court, accordingly, held "that the vessel was bound from the time of the delivery to the captain by the shipper at the city of Mobile and its acceptance by the master; and that the delivery to the lighterman was a delivery to the master, and that the transportation by the lighter to the vessel was the commencement of the voyage, the same, in judgment of law, as if the hundred bales had been placed on board of the vessel at the city instead of the lighter; and that the lighter was simply a substitute for the bark for this portion of the service." Page 391.

In the present case the questions chiefly litigated were, who employed the lighter, and in whose legal possession was the tobacco when on board the lighter? On the part of the ship, it is contended that the lighter was not employed by the steamer, her master, or agents; and that the tobacco was not in the possession or control of the ship, actual or constructive, until actually delivered on board by the lighter.

There is no direct evidence as to what was the actual arrangement or understanding, between this steam-ship line and the lighterers in Havana. The lighterage was a separate charge of six cents per bale, and entered in the margin of the bill of lading as a distinct charge, to be collected in addition to the freight *eo nomine*. But it is clear that there must have been some understanding, or arrangement, between the owners of the steam-ship line and the lighterers, from the fact, which clearly appeared in proof, that, by the well-established

usage and understanding at the pier, all light cargo, such as this, destined for the line to which this steamer belonged, was to be lightered at certain established tariff rates by the lighters of Mendez & Co., to whom this lighter belonged, unless the shipper arranged specially for lighterage in a different manner; which, it is said, he had the option to do, although that option appears not to have been generally understood.

The evidence taken at the trial is, in the main, circumstantial evidence bearing upon the question whether the lighter was to be deemed employed by the ship, or by the shipper. I shall not pursue this part of the case further, because the other question of negligence on the part of the lighter lies at the threshold of the libelants' case; and upon this question, as the evidence stands, I do not feel warranted in decreeing for the libelants. *Prima facie* it would seem to be negligence, and gross negligence, that bales, very dry and slippery, should be piled three tiers high above the gunwale, and have no protection by lashing, when they are liable to slide off into the water if the lighter is tipped a little by a gust of wind. But the testimony on the part of the lightermen is explicit that these goods were lightered in the usual way; that the cargo was of the customary amount; that it is not usual in Havana to lash or secure the bales; that the bales were no more slippery than usual; and that such accidents were extremely rare, as he had only known three or four such in a long experience.

I confess, indeed, to much doubt of the entire accuracy of this testimony. A custom not to secure slippery bales piled above the gunwale would seem to be merely customary negligence. But how can this court, at this distance, and without further proof of the circumstances, and in the absence of any contradiction of the respondents' testimony, affirm that such an established custom is *ipso facto* negligence, and therefore void as a defense? The harbor, except in extremely rare instances, may be smooth and quiet; the lighters may be built so stiff as to have very great stability in the water; and the amount of sail used may be so slight, as possibly to make reasonable and justifiable the alleged usage of dispensing with any lashing or fastening of bales piled a certain distance above the gunwale. The reasonable sufficiency of the alleged customary mode of loading must therefore depend upon the circumstances of the port and the country, of which this court certainly has no judicial knowledge, and which the evidence does not disclose. If, as appears from the respondents' evidence, the lighter was in this case loaded in the usual manner, and none of the customary precautions were omitted on their part for the safe lightering of the tobacco, and the bales under such circumstances slid off in consequence of a sudden gust of wind, which was extremely rare, (see *Wardsworth* v. *Pacific Ins. Co.* 4 Wend. 33, 38,) then the loss was by a peril of the seas, and no negligence can be imputed to the lighter, and consequently none to the steamer, even though the lighter were in the steamer's employ; and the loss must

be set down to the exceptions in the bill of lading. It is sufficient to rebut the charge of negligence to show that the stowing was in conformity with the established usage of the port. Shear. Neg. § 6; *Baxter* v. *Leland,* 1 Blatchf. 526; *Lamb* v. *Parkman,* 1 Spr. 343, 351; *The Titania,* 19 FED. REP. 101, 107, 108; *The Geo. Heaton,* 20 FED. REP. 323; *The Chasca, ante,* 156.

If I were to hold the steamer in this case, she ought to have a remedy over against the lighter in Havana. It would be unjust to charge the steamer upon evidence that would exempt the lighter in a suit there. Much as I may doubt the accuracy of the evidence given concerning the alleged custom of Havana, or, if some such custom exists, whether this lighter was loaded in conformity with it, I cannot feel warranted in disregarding the positive evidence given, in the absence of all other proof to the contrary. I am reluctantly constrained, therefore, to dismiss the libel, leaving the libelants to their remedy against the lightermen in Havana, or to such further proof as they may make upon appeal in the circuit.

---

## THE MARY R. McKILLOP.[1]

*(District Court, E. D. New York.* October 3, 1884.)

TOWAGE—NEGLIGENCE—BREACH OF CONTRACT—DEVIATION.

A canal-boat sprang a leak while in tow of a tug, and thereafter sank. *Held* that, although the leak was probably caused by the boat's coming into contact with a floating piece of ice, still, as the proofs did not show a failure on the part of the tug to use due care and skill, the tug could not be held liable for the boat's sinking. It was not a breach of the towing contract for the tug to take another barge in tow, and land her at another place, during the same voyage, since it appeared from the circumstances that this was in accordance with the parties' understanding of the contract, and was, therefore, not a deviation. The libel against the tug for the sinking of the boat was therefore dismissed.

In Admiralty.

*Carpenter & Mosher,* for libelant.

*Hyland & Zabriskie,* for claimant.