## THE MARY E. CUFF.

### FENNO et al. v. THE MARY E. CUFF.

(District Court, E. D. New York. November 30, 1897.)

COLLISION—NEGLIGENT ANCHORAGE.

    A master who, on a dark evening, in spite of high wind and an approaching storm, anchors his schooner in the usual way, with only one anchor out, when he might have used two, and leaves no one on board to watch during the night, is guilty of negligence; and his vessel is liable for damages caused by dragging her anchor in the storm, and colliding with another vessel, anchored in a proper place. It is no excuse that others cared for their vessels, on the same occasion, in the same way.

This was a libel in rem to recover damages caused by collision.

Wilcox, Adams & Green, for libelants.
Thomas J. Ritch, for claimant.

TENNEY, District Judge.    This is an action brought by Lawrence C. Fenno, executor, and Laura W. Lowndes, executrix, of the last will and testament of Walter C. Tuckerman, deceased, against the schooner Mary E. Cuff, her tackle, etc., to recover damages in a cause of collision, wherein the sloop yacht Liris was injured and sunk in the Port Jefferson Bay, on the night of November 5, 1894. It is admitted that the yacht Liris was sunk in Port Jefferson harbor, on the night of November 5, 1894, and the question here to be decided is which schooner, the Mary E. Cuff or the Observer, caused such sinking and injury to the yacht Liris.    The libelants claim that it was the schooner Mary E. Cuff, while the claimant contends that it was the schooner Observer.    November 5, 1894, was a wet and stormy day, with the wind, at Port Jefferson, in a northeasterly direction.    In the evening of that day the storm increased, and the wind changed, and was blowing hard from the northwest.    It appears that when last seen on the night of the collision the Mary E. Cuff was lying at anchor in the neighborhood of 1,000 feet to the northwest of the yacht Liris, while the Observer was lying at anchor from 300 to 500 feet to the north or northeast of the yacht Liris. The captain of the schooner Cuff testifies that, if a straight line was drawn from the Cuff to the Liris, the Observer would be to the eastward of such line some 300 feet, and the owner says some 200 feet. On the morning of November 6th, the Cuff was found near to the Liris, with her anchor over or across the anchor chain of the Liris, while the Observer had drifted in a southerly direction some 400 or 500 feet beyond the Liris.    No one saw the collision.    We have, therefore, in deciding which schooner collided with the Liris, to depend in a great measure upon the direction of the wind, and upon the location of the two schooners, the Cuff and the Observer, on the night of November 5th and the morning of November 6th.    In addition to this, however, there are certain marks and scratches upon the Cuff, and splinters from the Liris found upon her deck, which aid

somewhat in coming to a proper conclusion in this case. I am clearly of the opinion that the Mary E. Cuff drifted down and collided with the yacht Liris, and caused her to sink, and sustain the damages she did. It is impossible for me, considering all the circumstances in this case, to arrive at any other conclusion.

It is contended by claimant, however, that if it be found that the schooner Cuff did collide with the yacht Liris, yet there is no liability, for the reason that the Cuff was properly anchored, and left in the condition that any prudent man would have left her, and that the accident was inevitable, and beyond human forethought and skill to prevent. This contention is not sound. There is no claim that the Liris was anchored in an improper place. No such defense is set up in the answer, nor does the evidence warrant any such suggestion. The fact is, the schooner Cuff dragged her anchor some 1,000 feet, and drifted upon and collided with the yacht Liris, as hereinbefore stated. Moreover, the day preceding the accident was cloudy and windy, and had been peculiarly threatening. In the evening the wind had changed to the northwest, and was blowing hard. The night was dark, and a storm was at hand. The owner and master of the schooner Cuff had timely warning of this increasing and approaching storm, and should have put their schooner in order. This they signally failed to do, and must be held responsible for their neglect. They anchored their boat in a place of convenience. They left it in the usual way. They cast but one anchor, when they had two at hand. They left no one on board to guard and watch the vessel during this stormy night. This was negligence. Had they taken the precaution which prudence and care demanded, there might have been no collision. The fact that others cared for their vessels, on this night, in the same way, does not excuse or acquit the claimant of his neglect. There must be a decree for the libelants, with an order of reference to ascertain the amount of damages.