## THE HYADES.

### (Circuit Court of Appeals, Second Circuit. July 1, 1903.)

#### No. 177.

1. SHIPPING—INJURY TO CARGO—SEAWORTHINESS OF SHIP.

A new steel steamship, admittedly first-class in construction and equipment in every other respect, cannot be held liable for damage to a cargo of wheat by water, on the ground of unseaworthiness at the beginning of the voyage, because of the insufficiency of the hatch coverings, under section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), where the wooden covers were tight and well fitted, and over them were fastened two canvas covers of No. 1 hard duck—one new, and the other nearly so—such as were usually considered a sufficient covering, and which were specifically approved by the underwriter's surveyor under whose inspection the loading was done, and where shortly after sailing the vessel encountered a three-days hurricane, during which the seas broke over her, dismantling her steering gear and producing a general straining and leakage, resulting in injuries which it cost $14,000 to repair. Under such evidence, the damage must be attributed to perils of the sea.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal by libelants from a decree of the District Court for the Southern District of New York dismissing libel for damages to cargo of wheat while being carried by the steamship Hyades from Galveston to New York, in September, 1900. The negligence charged against the vessel is her failure to provide suitable hatch coverings for the voyage. Decision below is reported in 118 Fed. 85.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

H. Putnam, for appellants.

Wilhelmus Mynderse, for appellee.

COXE, Circuit Judge. The salient facts are carefully stated in the opinion of the district judge.

The third section of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) provides that if the owner of any vessel transporting merchandise or property shall exercise due diligence to make her in all respects seaworthy and properly manned, equipped, and supplied, she shall not be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel or for losses arising from the dangers of the sea or acts of God.

The Hyades was a new steel steamer of the highest class, having been completed in June, 1900, three months prior to the voyage in question. She was exceptionally strong, contained all the latest improvements and was propelled by triple expansion engines of 2,000 indicated horse power. Indeed, it is practically admitted that she was structurally perfect and seaworthy in all respects, save one; the covering of her hatches. The coamings were three feet in height and so constructed that it was impossible for water to stand on the

¶ 1. Losses by perils of the sea, see note to The Dunbritton, 19 C. C. A. 465.

hatches. The covers were of white pine, laid fore and aft in tiers. They were made with straight edges, designed to fit tightly without calking. When the wooden covers were in place two canvasses of "hard No. 1" cotton duck were spread over them and securely battened down. One set of these canvas covers was absolutely new, being used for the first time, and the other set was substantially new, having been supplied in June. The testimony fully sustains the finding that this material is the best known hatch covering in use and that it is not customary to employ oil, tar or any other preparation, in connection with it. It was also proved that it was customary to use but two covers of this hard, heavy, closely woven canvas, although frequently a third covering of old material, called a "chafer," is used to protect the other two. The surveyor of the underwriters, under whose inspection the vessel was loaded, testified: "I considered her as safe when she left Galveston, to go to any part of the world, as any ship I ever saw." In short, we are unable to specify any additional protection which could have been adopted to make the vessel more seaworthy.

Two days after leaving port the Hyades was caught in the very center of the unprecedented hurricane which swept over Galveston with such appalling results. For three days she was buffeted by wind and waves, tremendous seas breaking over her, which dismantled her steering gear, carried away everything movable and produced a general straining and leakage of the ship. It is enough to say she was so severely injured that it cost $14,000 to repair her. The wonder is not that the cargo was damaged but that the ship survived at all.

We have, then, the case of a strong, new, modern steel ship, seaworthy in every respect and properly manned and equipped, encountering a cyclone of unprecedented fury, which for three days held her in its grasp. That the damage to the cargo was due to the storm cannot be doubted. Indeed, a better illustration of loss by perils of the sea can hardly be imagined.

The decree is affirmed with interest and costs.