## THE ON-THE-LEVEL.

### (District Court, E. D. New York. December 29, 1903.)

1. SHIPPING—INJURY OF STAKEBOAT BY CAPSIZING OF MOORED SCOW—NEGLIGENCE OF CARE TAKER.

Claimant's scow, with a deck load of earth and stones, piled to a height of 14 feet in the center, and no load in its hold, tied up to a scow which was made fast to another scow of libelant, used by him as a stakeboat for scows of his own. While so placed, claimant's care taker left the scow, and did not return. The wind increased, and, one of the lines of claimant's scow having parted, it swung around; and, to prevent injury to the other boats, the master of the stakeboat brought it around and made it fast to the stakeboat. Some time during the night it capsized—presumably from the shifting of the load, due to the rocking motion—and injured the stakeboat. *Held*, that the proximate cause of the injury was the negligence of the care taker in leaving his boat unattended, and that libelant was entitled to recover for the resulting damage.

In Admiralty. Suit in rem to recover for injury to scow.

Benedict & Benedict (F. C. Benedict, of counsel), for libelant.
James J. Macklin (Mr. Gove, of counsel), for claimant.

THOMAS, District Judge. The libelant's scow was lying south of Liberty Light, off the Jersey shore, and was used as a stakeboat; that is, scows bringing dirt to be delivered on an improvement along the waterway made fast to such stakeboat until there was an opportunity for them to go in and deliver their cargo. However, the stakeboat was intended only for such scows as brought dirt for delivery to the libelant. Nevertheless the scow On-the-Level on Thurs-

day, December 11th, did make fast to the libelant's scow Frolic, as follows: On the stern of the Frolic, on the starboard side, singled out, were two Brown & Fleming scows. On the port side was a scow called the "Bouker." After the Bouker, the claimant's scow was made fast. On Saturday the care taker on claimant's scow went to town, for the alleged purpose of getting provisions, and was not seen again, so that the scow was left without a care taker. On Saturday the wind decreased, and in the evening the claimant's scow broke her starboard fastening to the Bouker, and swung around on her port mooring so that some portion of her stern was on the port side of the Frolic. As her iron corners would injure the Frolic on account of this action, the keeper of the Frolic cast her off from the Bouker, brought her up alongside the port side of the Frolic, and made her fast by forward and aft lines. About 11 o'clock at night the keeper of the Frolic went down into the hold of the claimant's scow, and found it free from water. Early on Sunday morning the claimant's scow capsized towards the Frolic, and her outboard side went so high onto the Frolic as to strike the top of the latter's house, some 22 feet above the water, crushing it in. It is for this injury that the action is brought. The claimant's scow was loaded with dirt and stones, with the sides sloping to the center, where the height was 14 feet; the master of the Frolic testifying that he measured it with a pole. It had a list to port of about a foot. It was the opinion of the master of the Frolic that the action of the water kept driving the dirt onto the inboard side of the scow until it accumulated in such quantity there that she went over as stated. Her load was entirely above the deck, there being nothing in her hold, which was 9 feet deep. The action is entirely for negligence, so that the trespass in tying up to another man's boat is not in the case. It was gross negligence for the care taker of the scow to leave it on Saturday, and that may be deemed the proximate cause of the accident. Had he remained, where his duty was, it may be presumed that due watchfulness would have prevented the scow's mooring from breaking loose, and, even if it had, he might have replaced it. Instead of that, he left it for the consequences of the Frolic to bear the consequences of his negligence, and, after the scow was made fast alongside of the Frolic, there was some change of conditions that caused it to capsize. It is not to be supposed that the cause was so occult that the absent care taker could not have discovered it and prevented its effect, had he been present.

The libelant will have a decree.