Argued July 25, decided August 6, 1912.

## RICHARDSON v. KLAMATH S. S. CO. *

[126 Pac. 24.]

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK—
    QUESTION FOR JURY.

1. In a longshoreman's action against the steamship company which employed him to load lumber, for injuries from the falling of a tier of lumber, evidence *held* to require the question of assumed risk to be submitted to the jury.

MASTER AND SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.

2. An employe's assumption of risk is a question for the jury, unless the evidence is such that but one conclusion could be drawn by any reasonable man.

* The authorities on the question of a servant's assumption of risk of danger imperfectly appreciated are collated in a note in 4 L. R. A. (N. S.) 990.          REPORTER.

Master and Servant—Assumption of Risk.

3. For dangers to be assumed by an employe, they must be not only obvious to a reasonably prudent person in his situation, but must be appreciated by him.

Master and Servant—Duty of Master—Safe Place to Work.

4. Where a steamship company employed a longshoreman to load lumber which was piled in tiers, it owed him reasonable care to obviate the dangers pertaining to the work, though the lumber was piled by another company.

Master and Servant—Injury to Servant—Evidence—Custom.

5. In an employe's action for injuries from the falling of lumber which he was removing to load on a vessel, evidence, that his method of removing the lumber by taking down one tier entirely before attacking another was the customary method, was admissible on the question of contributory negligence.

Trial—Injury to Servant—Instructions—Custom.

6. In an employe's action for injuries from the falling of a tier of lumber which he was loading on a vessel by removing one tier at a time before attacking the next one, an instruction that, if such method of removing the lumber was the customary one, the plaintiff was not negligent, was erroneous as an invasion of the province of the jury, since this custom would not exonerate the plaintiff from the charge of contributory negligence.

Appeal and Error—Harmless Error—Instruction.

7. Such instruction was not harmless, where there was evidence of two methods of removing the lumber, one of which was less dangerous but more difficult than the other.

From Multnomah: Calvin U. Gantenbein, Judge.

Statement by Mr. Justice Burnett.

This is an action by D. W. Richardson against the Klamath Steamship Company, a corporation.

It is averred in import by the complaint that on January 9, 1910, the plaintiff was employed by the defendant as a longshoreman to assist in loading lumber upon its steam vessel, Klamath, then lying at a dock in the town of St. Helens, in Columbia County; that the lumber was piled on the dock in tiers of about seven feet in height, which were covered with snow and frozen together, but were not braced in any manner as they should have been to keep them from falling; that it was

plaintiff's duty together with a co-laborer to tear down from the top of each tier of lumber sling loads of the same, connect it with the boom by an encircling chain in the form of a noose, and give a signal when so fastened, when the same, by means of winches and other apparatus, would be hoisted aboard the ship. It is particularly alleged "that the said piles of lumber were stacked up in tiers against each other and were not braced by crosspieces of lath or lumber or otherwise from one tier to the other at different places in said piles to prevent them from falling, in consequence of which it made it dangerous and unsafe for plaintiff to work in and around said lumber, as aforesaid, all of which facts the said defendant knew or ought to have known by the reasonable use of care or foresight." It is stated in substance that on the date mentioned, after plaintiff and his fellow workman had been engaged for some time in loading the lumber in the manner described, one of the tiers next to the one from which just then they had been taking lumber, suddenly and with great force, on account of the defendant's negligence and failure to brace the lumber and to prevent it from falling, tumbled down upon the plaintiff, inflicting upon him severe injuries particularly described; and that they were caused by the negligence of the defendant in not bracing the piles and tiers of lumber by crosspieces of lath or lumber or otherwise to prevent them from falling upon the plaintiff while working about the lumber. He claims both general and special damages.

It is admitted by the answer that the piles of lumber were not braced, and it is denied that it was necessary to brace them as contended in the complaint. The complaint is otherwise materially traversed for the most part by the answer. For the first affirmative defense the defendant alleges in substance that its steamship,

Klamath, was lying at the dock of the St. Helens Mill
Company, in Columbia County, Oregon, engaged in load-
ing lumber from the dock; that plaintiff was an expert
workman at that sort of work and in defendant's employ,
and was working upon the wharf fastening the lumber
into bundles or sling loads so that the same could be
hoisted aboard; that the lumber was securely piled
according to the use, practice, and custom of mill com-
panies engaged in the business, in tiers of about seven
feet in height, and at the time plaintiff was injured it
was frozen together, all of which plaintiff well knew,
and on account of which, in order to form the sling load,
it became necessary for the plaintiff to pry the tiers and
pieces of lumber apart; that in the pursuit of his employ-
ment the plaintiff was careless and negligent in a manner
conducive to the alleged injury by carelessly and neglig-
ently removing the lumber so as to render the tiers
unstable, notwithstanding that they were theretofore
safe, and carelessly taking down the whole of one tier
before starting to handle any of the adjoining one thus
displacing the support of that which fell; that plaintiff
knew the unstable condition of the lumber pile produced
by his taking it apart in the manner described and with-
out due care, but, on the contrary, being heedless and
careless of his surroundings, stood with his back to the
lumber, and while so standing the lumber fell and struck
him whereby the injuries complained of were inflicted,
wholly and solely on account of his own negligence. For
another defense the answer charges that the plaintiff
was an experienced laborer in that line of work and
knew the manner in which the lumber was piled, and
that the tiers were liable to fall, and with this knowledge
and his appreciation of the situation assumed the risk
of the employment. The allegations of contributory
negligence and assumption of risk were denied in detail
by the reply.

A jury trial resulted in a verdict and judgment in favor of the plaintiff, from which the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Griffith & Leiter, Mr. F. J. Lonergan* and *Mr. Clarence L. Eaton,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Messrs. Giltner & Sewall,* and *Mr. Enoch B. Seabrook,* with oral arguments by *Mr. R. R. Giltner* and *Mr. Seabrook.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In the defendant's brief it is first contended that the plaintiff assumed the risk and that for that reason, among others, a motion for a nonsuit, interposed at the close of plaintiff's case, should have been allowed.

1. It appears from the evidence accompanying the record that the St. Helens Mill Company had a dock, at the town of that name, upon which were several piles of lumber awaiting shipment. The pile at which the plaintiff was working was composed of several tiers of lumber of various thicknesses and widths, but mainly 1 inch in thickness and from 4 to 12 inches wide. The witnesses describe it as variously composed in part of pieces 1 by 12, 2 by 12, 2 by 6, 2 by 4, and 4 by 4 inches in width and thickness; but all agree that it was piled in parallel tiers of 12 inches wide and about 7 feet high. There were between 30 and 40 of these tiers in the stack where the injury occurred. At one end they were laid so the ends of the boards came to a line making that end of the pile square and perpendicular, but the lumber was of different lengths so that the other end was ragged and uneven. The lumber had been stacked under the direction of the mill company, and the

defendant had gone there with its steamship to take it aboard as freight to some other port. The plaintiff was one of twelve men employed as longshoremen to put the lumber aboard. The stacks were covered with snow and frozen together so that they appeared to be solid, so much so that it was necessary to use splitting bars to pry the boards apart. There was testimony on behalf of the plaintiff to the effect that the details of taking down the lumber and putting it into sling loads was left to the laborers themselves. They had their choice to take it down a tier at a time or load part of it from several tiers at once as they chose. The details were left to the men so long as they kept the lumber going aboard well. In order to loosen the lumber they would strike up on the boards and jar them and then get behind them and give them a pry. They would let the top ones fall down and then straighten them up into sling loads. The men worked in pairs at different piles of lumber. The plaintiff worked in company with a witness named Blakesley. After they had removed a number of tiers from the pile at which they were working, in the manner described, variously estimated at from 10 to 15 in number, they had prepared a load ready for the chain, and plaintiff was standing between it and the pile in a space about 6 feet wide with his back toward the pile and his face towards the sling load, when, as he says, without warning, the next full tier suddenly fell and caught him between it and the sling load, inflicting the injuries of which he complains.

Another witness for plaintiff, Fred Harmening by name, testified in substance that, when lumber was piled in the way described and they took down one tier at a time without disturbing the adjoining tier, the usual and customary way was to watch the standing tier and test it by shaking it and see whether it was solid or not

and observe it as they worked so as to avoid its falling.
Joe Brown, a witness for plaintiff, also testified, in
answer to questions by a juror, to the effect that the
proper way to remove lumber in such a case was to
work a tier down partly and then take off part of the
next tier back before entirely removing the front tier.
There was also some testimony to the effect that it would
be safer to work down several tiers at a time, gradually
decreasing the height towards the front of the pile, but
that in this case it was more difficult because of the
inconvenience of getting past the ends of the boards as
they projected towards the adjoining piles.   The wit-
nesses for plaintiff all agree that he and his mate
removed the front tier entirely before beginning upon
the next one.   The plaintiff testified that before begin-
ning work on the pile at which he was injured he took
hold of it and tried to shake it, but that it was frozen
solid, and that as he worked he did not discover any
braces or other support to hold the piles together.   The
plaintiff had worked some at loading lumber before, but
was more familiar with handling ties.

2. The question of assumed risk is one of fact and
which the jury and not the judge must decide unless,
taking the whole testimony on that subject together,
but one conclusion could be drawn by any reasonable
man.

3. An employe assumes only those dangers of his
employment which are obvious to a reasonably prudent
person in his situation by the exercise of his ordinary
powers of observation so far as consistent with the per-
formance of the duties of his employment.   Another con-
dition affecting this question is that the employe must
not only have seen the dangers but also appreciated them.
The nature of his employment in most instances prevents
the laborer from making that close inspection which

might be required of the master in providing a safe place in which the servant must work, and so the duty of the laborer to observe and take notice of the dangers of his employment is affected by his other duties of performing the work itself. The requirements of service in his station also affect his capability of comprehending any danger which might be otherwise more plainly visible to one not thus engaged. All these conditions make the question one for the jury. In this case the fact, about which there was some testimony, that the pile appeared to be firm and solid when they began work, might well lead the plaintiff to suppose that it was thoroughly braced and would not fall upon him while tearing down the heap. It is sufficient to say on this branch of the case that under all the testimony, of which only a brief resume has been given, the judge would not have been justified in taking from the jury the consideration of the question of assumed risk.

4. A second contention of the defendant is that it had no possession or control over the pile which fell so as to make it responsible for the condition of the same or the manner in which it was built, and that hence the rule requiring the master to provide a reasonably safe place in which to work did not apply to the situation. The deduction sought to be established is that, the lumber having been piled by the mill company in the way it was and by reason of which it fell, the defendant was not responsible for that and could not be held for the injury resulting. True enough, the defendant was not responsible for the manner in which the mill company had piled its lumber, neither was the plaintiff so responsible; but the defendant had gone there for the purpose of taking this very lumber aboard its ship, and it employed the plaintiff to labor in that matter. There was no privity existing between the plaintiff and the mill com-

pany. He looked to, and had a right to look to, the defendant to provide a reasonably safe method of moving the lumber. It was the duty of the defendant to use reasonable care in handling the lumber and to guard against any danger which might happen to its employes while so engaged. If no one had touched the lumber, it probably would have been standing to this day; but, when the defendant undertook to disturb the existing condition, there was at once cast upon it the duty of providing a reasonably safe method of operation. The defendant was not compelled to take the lumber, so far as appears; but, if it undertook to move it with the plaintiff's labor, the duty of the master at once arose to use reasonable care to obviate the dangers pertaining to the situation as it existed. If the lumber were dangerously piled, the defendant had no right to take its employes into the hazardous place without providing reasonable safeguards against the risk incurred. Whether the lumber was so piled as to make it hazardous to handle it, and whether the defendant used reasonable care in averting the danger, were questions of fact for the jury under all the testimony in the case, and the nonsuit was properly denied as against defendant's second contention.

5. We have yet to consider the two remaining assignments of error mentioned in the brief. One of them is to the effect that the court was wrong in allowing witnesses for the plaintiff to testify that the method of removing the lumber from the pile by taking down one tier entirely before attacking another was the usual and customary method.

6. The other is that it was error to instruct the jury as follows:

"Even though you should find that plaintiff removed the whole of the tier in front of the tier that fell before removing any of the tier that did fall, and you also find

that such was the usual and customary method and manner of removing said lumber, then I insruct you that plaintiff was not negligent in so removing the same, taking into consideration, of course, the frozen condition of the pile of lumber, and plaintiff's condition at the time."

In section 32, 1 Thompson's Comm. Negligence, the rule about custom in such cases is thus stated:

"Where there is no absolute standard of diligence fixed by law, evidence of usage or custom may become material in assisting a jury in determining the standard of care which ought to have been adhered to in a given case. * * On the other hand, where there is a statute imposing an absolute liability upon a municipality for failing to make its highways safe for travel, it is held that a general usage or custom as to placing rails or barriers along a highway embankment is of no importance in determining the liability of the municipality for failing to provide such barriers at a dangerous place. The conclusion seems to be that custom or usage cannot of itself make in any cases an absolute standard of negligence or diligence except in cases where persons are held to have contracted to act with reference to a given custom or usage, but that cases may frequently arise where evidence of a custom or usage may be an important element to be considered by a jury in determining whether there has been a failure to exercise ordinary care."

Labatt, in his Commentaries on the Laws of Master and Servant, § 353, uses this language on this topic:

"The only doctrine which it seems possible to formulate upon the subject is the somewhat vague one that, unless what the servant did was necessarily and inevitably so dangerous that it is impossible to concede that any prudent man would have acted in such a manner, evidence showing that he complied with a custom known to and expressly or impliedly sanctioned by his employer would generally turn the scale in his favor and secure for him the privilege of having the quality of his conduct determined by the jury, although he would otherwise have been declared incapable of recovering."

The admission of this testimony to the jury was proper, but the instruction was not. Immediately preceding the court's direction, already quoted, the judge stated to the jury that:

"Defendant alleges that the tiers of lumber in question were piled according to the usual practice and custom of mill companies engaged in that business. In this regard I instruct you that if you find from a preponderance of the evidence that the tiers of lumber in question were not piled with reasonable safety and were dangerous and liable to fall upon a person working near them or about them in the performance of their duties, and that defendant knew or in the exercise of reasonable care ought to have known this, and you further find under the instructions I have given you that the defendant was negligent, then I instruct you that the fact that the tiers of lumber were piled according to the usual practice or custom of mill companies is no defense, because custom or usage cannot justify negligence. In other words, these are questions of fact."

This charge correctly illustrates the principle affecting the defendant that, although the custom had been observed in piling the lumber, yet if it was in fact dangerous, and the defendant knew it was dangerous, or might have known it by the exercise of reasonable care, the custom would not excuse the negligence of the defendant in not providing against the peril to the laborers. Correlative principles also affect the plaintiff. He is bound to exercise ordinary care in observing the dangers of the situation, and if he knew, or in the exercise of reasonable care ought to have known, that the same lumber was piled in a dangerous manner and that if moved in the way which he pursued it was liable to fall upon him, then the custom of handling it in that way would not excuse him or exonerate him from the charge of contributory negligence. However, these elements, included in the charge respecting the defendant, are

omitted from the charge respecting the duty of the plaintiff, of which complaint has been made.

Again, the ultimate question for the jury to determine is whether or not the plaintiff was negligent in a manner contributing to his injury. In reaching a conclusion on that branch of the case the jury must consider all of the elements to which allusion has just been made. By the instruction challenged, however, the court in effect assumed as a matter of law that if the custom was followed the plaintiff was not negligent. In effect the judge said to the jury as touching the question of contributory negligence:

"All you gentlemen have to determine is whether or not the plaintiff pursued the usual and customary method of removing the lumber, and, if you find that he did, I say to you as a matter of law that he was not negligent."

In so doing the court invaded the province of the jury and assumed to pass upon a question which the 12 men should have considered for themselves.

Plaintiff has cited *Rush* v. *O. W. P. R. Co.,* 51 Or. 519 (95 Pac. 193), as fortifying the instruction now under consideration. In the opinion in that case Mr. Justice MOORE said:

"It is generally held that a servant who unnecessarily adopts a dangerous method of performing a labor required of him assumes the resulting danger. His choice of a customary method of doing such work, however, is not ordinarily regarded as negligence."

The case there under consideration was one in which the plaintiff, a brakeman in the employ of the defendant railroad company, sued for damages accruing to him by injuries received while in the pursuit of his employment as brakeman. In moving some cars in the yard of the defendant company they had collided with one another, and while extricating them from the jam the plaintiff had received his injury in undertaking to loosen a coup-

ling, and he gave evidence tending to show that he chose the customary method of performing the service. At the close of his case, on motion of the defendant, the circuit court entered a judgment of nonsuit. The question, then, on his appeal, was whether there was any testimony sufficient to take the issue to the jury. Mr. Justice MOORE was only considering whether or not there was such testimony, and in so doing used the language already quoted; but the opinion does not hold that as a matter of law the plaintiff was free from the charge of contributory negligence by reason of having followed a custom. For the same purpose plaintiff refers to *Pointer* v. *Klamath Falls Land Co.,* 59 Or. 438 (117 Pac. 605). In that case the plaintiff had been driving a four horse team attached to a wagon loaded with lumber. He was standing on the load, and as he drove along a street in Klamath Falls he turned to cross the defendant company's railway track. The franchise under which the road was operated required the rails of its track to be flush with the surface of the street, but defendant had negligently allowed the rail at that point to project above the grade line. The result, as plaintiff charged, was that, when he attempted to cross the track, the impact of the wagon upon the protruding rail thew him off and hurt him. The defendant answered his complaint charging him with contributory negligence in that he was standing instead of sitting upon the load. Over the objection of the defendant the circuit court allowed witnesses for the plaintiff to answer in the negative such questions as this:

"Would you consider it careless, reckless, or negligent to stand upon a wagon loaded with lumber, upon which there is no seat, driving four horses up a street with an incline and making a turn?"

On appeal to this court Mr. Justice McBRIDE, discussing that matter said: "We are inclined to think that

the testimony of skilled drivers, as to the proper and customary position of a driver, under the circumstances detailed, is admissible; but the question went further than that, and practically required the witness to give an opinion upon the ultimate fact to be decided by the jury, namely, the fact of plaintiff's negligence. This was a usurpation of the functions of the jury, and was reversible error." Like the other case just mentioned, this opinion does not teach that as a matter of law observance of a custom will of itself necessarily defeat an imputation of contributory negligence.

A careful analysis of all the authorities cited from other states by the plaintiff here shows that the courts have in no instance gone farther than to say that such evidence is admissible to enable the jury to consider the whole situation and determine whether or not the charge of negligence of the plaintiff contributing to his injury has been established. One of plaintiff's citations is *Campbell* v. *Railway Co.*, 243 Ill. 620 (90 N. E. 1106). There, one of the switching crew undertook to get upon a brake beam to ride to the place of performance of his duty and was injuried. And against the charge of the defendant that the plaintiff was guilty of contributory negligence the latter introduced testimony that such action was customary among switchmen. This was assigned as error, and in the opinion of Mr. Justice DUNN said: "It is not the province of this court to determine whether these facts were proved, or whether, if proved, they establish negligence on the part of appellant or care on the part of the appellee. We have only to consider whether the facts which the evidence tends to prove have any reasonable tendency to show that the appellant was negligent and that the appellee was injuried by such negligence and was himself at the time in the exercise of ordinary care." In the case at bar the circuit court was right in admitting the testimony

of custom to the consideration of the jury; but it was error to assume, as it did in the instruction, as a matter of law, that the observance of the custom exonerated the plaintiff from the charge of contributory negligence. The only evidential purpose of custom in such cases is to more fully explain the situation to the jurors and assist them in determining whether, as against the defense of contributory negligence, the plaintiff did the work as a reasonably careful man would have performed it under all the attending conditions of which the customary way was only one. All the other elements to which allusion has been made, touching the question of contributory negligence, required the attention of the jury as well as the custom. Its observance is not conclusive on that point but only helpful. *Nass* v. *Schultz*, 105 Wis. 146 (81 N. W. 133); *Rylander* v. *Laursen*, 124 Wis. 2 (102 N. W. 341); *Wibel* v. *Ill. Cent. R. Co.*, 155 Ill. App. 349; *Bodie* v. *Charleston & W. Ry. Co.*, 61 S. C. 468 (39 S. E. 715).

7. The plaintiff contends, however, that this instruction, if erroneous, was harmless because there was no other testimony on the subject except that given by the plaintiff to the effect that this method of handling the lumber was customary. As already pointed out, however, the plaintiff's own witnesses gave testimony tending to show that it was also usual to take down the piles part of a tier at a time, removing part of a back tier so as to make it less top heavy and not entirely displacing the tier in front until some of the rear tier had been so removed, and one of the witnesses employed this latter method in his part of the work. The excuse for not doing this way in the plaintiff's case was that it was rendered difficult by reason of having to reach up over the front tier and on account of it being hard to get past the ends of the lumber between that and the adjacent pile. There was therefore evidence on the

question of whether or not there were two methods of removing the lumber, one of which was less dangerous but more difficult than the other. Apropos of this situation Labatt, Master & Servant, § 333, lays down the rule thus:

"The general rule of law is that when the danger is obvious and is of such a nature that it can be appreciated and understood by the servant as well as by the master or by any one else, and when the servant has as good an opportunity as the master or any one else of seeing what the danger is and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for injuries received in consequence of the condition of things which constituted the danger. * * This principle is deemed to involve the corollary that, in the absence of one or the other of the differentiating factors to be discussed in the following subtitle, a servant will ordinarily be pronounced negligent as a matter of law whenever it is clear from the evidence that there was a safe and a dangerous method available for the performance of the work at hand, and that he selected the latter method with knowledge actual or constructive of the fact that it was dangerous, the mere fact that the safer method is one which involves considerably more trouble than the more dangerous one is no excuse for adopting the latter."

In this case there was evidence authorizing the jury to find that the plaintiff had as good an opportunity as the defendant to see and know the condition of the lumber and to appreciate the risk of moving it, and that the details of the work were left to himself and those with whom he worked so that he had choice of the different methods described by his own witnesses. Under similar circumstances as to the same pile of lumber, custom affects alike every one concerned having equal observation and comprehension of the risk, and the question should have been submitted to the jury in the same way in respect to both parties, leaving to the 12 men

the determination of the ultimate question of negligence or contributory negligence.

For the error in the instruction complained of, the judgment is reversed, and the cause remanded for further procedure not inconsistent with this opinion.

REVERSED.