Argued October 24, affirmed November 13, 1917.

## MYRTLE POINT TRANSP. CO. *v.* PORT OF COQUILLE RIVER.*

(168 Pac. 625.)

**Trial—Motion for Nonsuit—Inferences for Plaintiff.**

1.   On motion for nonsuit, every intendment and every reasonable inference must be made in favor of plaintiff, and the court must assume those facts as true which the jury can fairly find from the evidence.

**Navigable Waters—Depositing Trees and Brush—Negligence—Question for Jury.**

2.   In an action for injuries to boats through defendant's negligence in depositing fallen trees and brush in a river, defendant's negligence *held* for the jury.

[As to remedies for obstruction of navigable waters, see note in 57 Am. St. Rep. 693.]

*On the question of right to obstruct or destroy rights of navigation, generally, see comprehensive note in 59 **L. R. A.** 33; 51 **L. R. A.** (N. S.) 1172.                   REPORTER.

**Navigable Waters—Injuries from Obstructions in Stream—Contributory Negligence—Question for Jury.**

3. The evidence as to the condition of the boom to which plaintiff tied his boats being conflicting, *held*, that it was not negligence as a matter of law for plaintiff so to tie up his boats.

**Navigable Waters—Injuries from Brush Deposited in Stream—Contributory Negligence—Question for Jury.**

4. The question whether plaintiff was negligent, by failing to leave a lookout and a navigator on each of the boats on the evening in question, *held* for the jury.

**Negligence—Liability—Contribution to Damage by Another.**

5. That the negligence of another contributed to damage caused by defendant's negligence does not excuse defendant from liability.

**Municipal Corporations—Torts—Negligence in Doing Lawful Work.**

6. A lawful work done by or at the instance of a municipal corporation must be done with due regard to the rights of others, and if it be done negligently a party injured is entitled to recover.

**Negligence—Shipping—Custody of Vessels—Joint Violation of Requirements.**

7. One is not to be excused from negligence on the ground others are in the habit of so acting negligently, and where a statute or valid harbor regulation requires a certain degree of care as to the custody of steamboats, violation is not to be excused because the statute or regulation is generally violated.

**Negligence—Custom.**

8. When there is no absolute standard of care fixed by law, evidence of what is usual is often valuable to the court or jury in determining the issues on a charge of negligence.

**Courts—Injuries to Vessels—Common-law Remedy—Admiralty Rules.**

9. A controversy over injuries to plaintiff's river steamboats through washing out of the boom to which they were moored on account of the giving way of the obstruction in the river formed there by trees and brush deposited by defendant is cognizable in the admiralty court, and, while the federal judiciary act saves to suitors in such cases the right of a common-law remedy, the common-law courts should ordinarily follow the rules obtaining in admiralty.

**Navigable Waters—Depositing of Refuse in Tributary—Statute.**

10. Depositing refuse matter in a tributary of a navigable river constitutes a violation of Act Cong. March 3, 1899, c. 425, § 13 (30 Stat. 1152 [U. S. Comp. Stats. 1916, § 9918]), though navigation is not impeded or obstructed thereby; if the matter is deposited on the banks of a stream, the offense is not complete until it is washed into the river and obstructs navigation.

**Negligence — Violation of Statute — Deposit of Refuse Matter in Tributary.**

11. Defendant's violation of a federal statute prohibiting the deposit of refuse matter in the tributary of a navigable river was negligence *per se.*

Navigable Waters—Obstructions—Application for Permit—Effect.

12. In an action for injuries to plaintiff's steamboats through defendant's deposit of refuse matter in the tributary of a navigable river, in violation of a federal statute permitting such deposit only under permit from the Secretary of War, that an application for a permit therefor was prepared by defendant, or mailed or sent to the War Department of the United States or any officer thereof, it being admitted that no permit was issued, did not excuse defendant.

Navigable Waters—Obstruction of Channels—Statute.

13. Plaintiff, by tying its boats to a log boom of a lumber company in a river, unless it obstructed navigation thereby, did not violate Act Cong. March 13, 1899, c. 425, § 15 (Comp. Stats. 1916, § 9920), providing that it shall not be lawful to tie up or anchor vessels or other craft in navigable channels so as to obstruct the passage of other vessels or craft.

Negligence—Proximate Cause—Contributory Negligence—Instruction.

14. Where the court had instructed that under certain circumstances it would be the jury's duty to find defendant guilty of negligence, an instruction that, if they should find defendant so guilty, plaintiff could not recover, unless defendant's negligence was the proximate cause of the injury, and plaintiff was free from contributory negligence, was proper.

From Coos: JOHN S. COKE, Judge.

Action by the Myrtle Point Transportation Company, a corporation, against the Port of Coquille River, a municipal corporation, and M. O. Stemmler. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Department 2. Statement by MR. JUSTICE MC-CAMANT.

Plaintiff sues as the owner of two river steamboats, the "Dora" and the "Myrtle," to recover damages sustained by these craft October 7, 1913, in a catastrophe for which it is claimed the defendant is responsible. It appears that on the evening in question these boats were berthed in the north fork of the Coquille River a short distance above its confluence with the south fork. Some miles above this point the east fork of the river flows into the north fork. Plaintiff's boats were tied to the boom of Myrtle Point Mill and Lum-

ber Company.   On the evening of October 7, 1913, there was a substantial rise in the north fork of the Coquille which brought down the river considerable drift including brush which the defendant had cut on the east fork during the preceding summer. The boom was carried away and plaintiff's boats went with it. The boats were driven on the jetty at the mouth of the north fork and sustained material damage.

The complaint charges defendant with negligence in depositing fallen trees and brush in the east fork of the river. It is alleged that the brush, so deposited, was gathered "into a slowly moving splash-dam," as the water rose October 7, 1913, and that it gained in momentum as it proceeded downstream, sweeping away the boom and the boats fastened thereto. It is averred that the defendant should have foreseen this result.

The answer admits many of the allegations of the complaint, but denies the deposit of brush in the stream and denies all want of care on the part of the defendant. It alleges affirmatively that the injury sustained was due to the negligence of Myrtle Point Mill and Lumber Company and the contributory negligence of plaintiff. Plaintiff is charged with negligence in leaving its boats without a watchman and navigator on each of them; it is averred that by a proper lookout and by efficient navigation the boats could have been steered away from the obstructions on which they grounded. Contributory negligence is also predicated on the tying of the boats to the boom which is alleged to have been old, decayed and weakened, and plaintiff is charged with notice of its condition.

The reply denies the affirmative allegations of the answer.

The case was tried before a jury which found for plaintiff. Defendant appeals from a judgment entered on this verdict.                    AFFIRMED.

For appellant, Port of Coquille River, there was a brief over the names of *Mr. John D. Goss, Mr. M. O. Stemmler, Mr. John C. Kendall* and *Mr. Herbert S. Murphy,* with an oral argument by *Mr. Goss.*

For respondent there was a brief over the names of *Messrs. Peck & Peck* and *Mr. E. D. Sperry,* with an oral argument by *Mr. A. H. Peck.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

1–4. The most strenuous insistence of defendant is that the court erred in denying its motion for a nonsuit.

"Upon a motion for a nonsuit, every intendment and every reasonable inference must be made in favor of plaintiff, and the court must assume those facts as true which the jury can fairly find from the evidence": *Thienes* v. *Francis,* 69 Or. 165, 170 (138 Pac. 490).

Examining the testimony in the light of this rule, we find ample evidence that during the summer of 1913 the defendant slashed the brush and trees on the banks of the east fork of the Coquille; that a large amount of the brush and debris fell into the stream, the obstruction thereto being so great that a skiff could not be propelled up or down the stream and at some places one could cross the stream on the brush; it was the expectation of the defendant that so much of the brush as was in the bed of the river would float out on the first rise in the autumn; this rise came on October 7th and there is evidence that a quantity of brush came out as alleged in the complaint, carrying a great wall of water with it. The jury was entitled

to find from the evidence that this brush and the water that was behind it carried out the boom and plaintiff's boats. The east fork of the Coquille is a navigable stream during a portion of the year and it is a tributary of the Coquille which is one of the arteries of commerce in southwestern Oregon. The deposit of the brush in the stream was in violation of Section 13 of the Act of Congress approved March 3, 1899; 30 Stats. at Large, 1152, hereafter quoted. Plaintiff proved furthermore that at a meeting of the defendant held December 17, 1913, the minutes of the defendant admitted that the brush and trees had torn out the boom of the Myrtle Point Mill and Lumber Company. There was a dispute as to the accuracy of these minutes, and after the bringing of this action the defendant undertook to amend them, but at the conclusion of plaintiff's case the evidence justified the jury in finding that defendant had admitted that the carrying away of the boom was chargeable to the brush and trees which defendant had deposited in the stream. It may be said parenthetically that the correction undertaken to be made in the minutes did not greatly improve defendant's position; it appeared that the minutes of December 17, 1913, had been approved and that at a later meeting of the defendant, the commissioners approved the report of a committee which held that "the foreman in charge was negligent in not having all the trees and brush cut into as short lengths as per his instructions." The evidence was sufficient to be submitted to the jury on the question of defendant's negligence.

The motion for a nonsuit is based in part on defendant's contention that plaintiff was guilty of contributory negligence in the respects charged in the answer. The evidence as to the condition of the boom

is conflicting and we cannot say that it was negligence as a matter of law for plaintiff to tie its boats thereto. Nor can we say that plaintiff was negligent in failing to leave a lookout and a navigator on each of these boats on the evening in question. Plaintiff's evidence is to the effect that at the time when the boats were berthed there was but a slight rise in the river and there was nothing to indicate impending trouble. To hold as a matter of law that the owner of a small river steamboat, berthing her near the head of navigation on a river under normal conditions, is obliged to keep her steam up and to maintain a lookout "and an efficient person in charge" is to lay a heavier burden on navigation than seems reasonable. The question of plaintiff's contributory negligence was for the jury.

Defendant cites on this point: *The Mary E. Cuff*, 84 Fed. 719, *The Niobe,* 31 Fed. 164, *The On-the-Level,* 128 Fed. 511, and *The William E. Reis,* 143 Fed. 1013, 1016. These were all admiralty cases in which the court was judge both of the facts and of the law. It was held in each of those cases that the vessel should have been left in charge of a lookout or watchman, but the circumstances were widely different from those in the case at bar. In three of the cases there was notice of approaching storm or flood. In *The Niobe* the fault consisted in violating a harbor regulation. In *The William E. Reis* a vessel weighing 8,000 tons had been left near the mouth of the Cuyahoga River in charge of a boy; the water in the river was rising and the conditions demanded a slackening of the lines of the vessel which the boy was unable to do.

5-9. There is evidence that the negligence of Myrtle Point Mill and Lumber Company contributed to the catastrophe, but this on familiar principles does not excuse defendant.

It is suggested that defendant was organized for the improvement of Coquille River and that the work complained of was a lawful work looking to the betterment of navigation on the upper river. Defendant's evidence shows that navigation has been improved by the work done. But a lawful work done by or at the instance of a municipal corporation must be done with due regard to the rights of others, and if it be done negligently a party injured by such negligence is entitled to recover: *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180, 37 L. R. A. (N. S.) 1150); *Warren* v. *Astoria,* 67 Or. 603 (135 Pac. 527); *Portland Gas etc. Co.* v. *Giebisch,* 84 Or. 632 (165 Pac. 1004).

Plaintiff was permitted to prove over the objection of defendant that it is the general custom on Coquille River not to leave a watchman on a steamboat at night when it is tied to its moorings and this is assigned as error. It is true, as contended by the defendant, that a party is not to be excused from negligence on the ground that others are in the habit of acting negligently. Where a statute or a valid harbor regulation requires a certain degree of care, the violation of such statute or regulation is not to be excused on the ground that it is generally violated. On the other hand, when there is no absolute standard of care fixed by law, evidence of what is usual is often of value in assisting a court or jury in determining the issues on a charge of negligence: 1 Thompson on Negligence, § 32; *Richardson* v. *Klamath Steamship Co.,* 62 Or. 490, 498–500 (126 Pac. 24). Great value is attached to this character of proof in the admiralty courts: *Lamb* v. *Parkman,* 14 Fed. Cas. 1019, 1022 (Fed. Cas. 8019, 8020); *The Titania,* 19 Fed. 101, 107; *The City of Alexandria,* 23 Fed. 826, 828, 829; *The*

*Dan,* 40 Fed. 691–693; *The Isaac Reed,* 82 Fed. 566, 567; *The Tjomo,* 115 Fed. 919, 922, 923; *The Hyades,* 124 Fed. 58, 59 (59 C. C. A. 424).   This controversy is cognizable in the admiralty courts and while the federal judiciary act saves to suitors in this character of litigation "the right of a common-law remedy, when the common law is competent to give it," we think the common-law courts should respect and ordinarily follow the rules which obtain at admiralty: *Schuede* v. *Zenith Steamship Co.,* 216 Fed. 566; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 (61 L. Ed. 1086, 37 Sup. Ct. Rep. 524).

The remaining assignments of error are based on the instructions given and the requested instructions refused.   The court instructed the jury as follows:

"If you find that the defendant Port of Coquille River through its agent or employees deposited or caused to be deposited any trees or brush in the north fork of the Coquille River or its branches, without a permit so to do from the Secretary of War of the United States, and that said brush and trees were carried by ordinary rise of water in such manner as to proximately cause the damage complained of, then you are instructed that the said defendant was and is guilty of negligence."

"The court has instructed you that the depositing of trees and brush, or either, in the waters of the north fork of the Coquille River without a permit would be a violation of the law, in other words, would constitute negligence *per se* on the part of defendant."

These instructions were based on the Act of Congress approved March 3, 1899.   Section 13 of this Act, 30 Stats. at Large, 1152, is as follows:

" * * It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from any

shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided,* That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And provided further,* That the Secretary of War, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.''

10, 11. Section 16 provides that a violation of Section 13 shall constitute a misdemeanor and prescribes the penalty. The defendant contends that the depositing of matter in the river did not constitute a violation of the statute unless navigation was impeded or obstructed thereby. We do not so read the statute. The depositing of the matter in the tributary of a navigable river constitutes the offense. If the mate-

rial is deposited on the banks of a stream the offense is not complete until it is washed into the river and obstructs navigation. It appears from the testimony, both of plaintiff's and defendant's witnesses, that brush in large quantities was left in the stream by defendant and it is admitted that defendant had no permit from the Secretary of War authorizing the acts complained of. This court is firmly committed to the doctrine that the violation of such a statute is negligence *per se: Peterson* v. *Standard Oil Co.*, 55 Or. 511, 522 (106 Pac. 337, Ann. Cas. 1912A, 625); *Goodwin* v. *Rowe*, 67 Or. 1, 10, 11 (135 Pac. 171, Ann. Cas. 1915C, 416); *Beaver* v. *Mason, Ehrman & Co.*, 73 Or. 36, 52 (143 Pac. 1000).

Defendant requested the following instruction:

"As to the United States statute prohibiting the placing of drift in streams it becomes necessary to instruct you as to the authority of the federal government and the State of Oregon, respectively, over navigable waters, and the improvement thereof. Navigable waters of the United States are under the control of Congress, which has power to legislate in regard thereto so far as commerce is concerned. But in so far as navigable waters are within the territorial limits of a state, without regard to whether they do or do not connect with waters without such limits, the state has exclusive jurisdiction, subject to the paramount right of Congress to legislate concerning the use thereof. The purpose and intent of the federal statute in question was to prevent obstructions to navigation and not to prevent the State or its municipalities from improving the same for navigation purposes. In other words the statute does not refer to a course of conduct which has for its object the removal of obstructions to navigation and the improvement of the stream for the purposes of navigation. Therefore the fact that in so improving or endeavoring to improve the stream some drift was placed therein is not sufficient

86 Or.—21

to justify a finding that the defendant was negligent *per se,* or as a matter of law.''

The court gave the instruction except the last two sentences. In refusing to give the portion of the request so eliminated, the court did not err for the reasons above stated.

12. The defendant offered evidence that it had applied to the War Department for a permit to do the work complained of, but it was admitted that no permit was issued. Under these circumstances the court instructed the jury as follows:

''You are instructed to disregard all evidence introduced in this case tending to show that any notification of improvement or application for a permit therefor was prepared by the Port of Coquille River or mailed or sent to the War Department of the United States, or any officer thereof.''

This instruction was proper. The jury should not have been permitted to infer that the application for a permit justified or excused the acts of the defendant.

The defendant contends that it was error to give the following instruction:

''As a further affirmative defense the defendant Port sets up the contributory negligence of the plaintiff in tying its boats to the boom of the Myrtle Point Mill & Lumber Company, and alleges that in so doing the plaintiff was violating a statute of the United States and by reason thereof was guilty of negligence *per se.* On this phase of the defense you are instructed that the plaintiff was not violating any law and was not guilty of negligence *per se* unless you shall find that the tying of said boats to said boom did in fact prevent or obstruct navigation.''

This instruction was based on the contention of defendant that plaintiff had violated Section 15 of the Act of Congress approved March 3, 1899. This sec-

tion, in so far as it is material for present purposes, is as follows:

" * * It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such manner as to prevent or obstruct the passage of other vessels or craft."

13. Clearly there was no violation of this statute unless plaintiff obstructed navigation by tying its boats to the boom of the Myrtle Point Mill and Lumber Company. The instruction was proper.

14. The final contention of the defendant is that the following instruction contradicted those above quoted to the effect that the violation of Section 13 of the Act of Congress aforesaid constituted negligence *per se:*

"You are instructed that it is not sufficient to justify a verdict for the plaintiff for you to find that the defendant was negligent, but you must further find from a preponderance of the evidence that such negligence was the proximate or immediate cause of the injury and that the plaintiff was free from contributory negligence."

We find nothing objectionable in this instruction. The court had previously instructed that under certain circumstances it would be the duty of the jury to find that defendant was guilty of negligence. He now instructs that even if the jury should find defendant so guilty, plaintiff would not be entitled to recover unless the negligence of the defendant was the proximate cause of the injury and unless plaintiff was free from contributory negligence.

The above are the only specifications of error which are insisted upon. The judgment is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.