CERVANTES (UNITED STATES v.).   See Case No. 14,768.

## Case No. 2,561.

### The C. F. ACKERMAN.

Circuit Court, E. D. New York.   1877.[1]

## Case No. 2,562.

### The C. F. ACKERMAN.

[8 Ben. 496.][2]

District Court, E. D. New York.   July, 1876.[3]

DAMAGES—TUG AND TOW—SALVAGE AWARD.

Where a tug towed a vessel aground and she was compelled to pay salvage to another tug to haul her off:   Held, that the facts proved showing carelessness on the part of the tug, as the cause of the grounding, the vessel was entitled to recover from her as damages the salvage ordered by the court to be paid to the tug that drew the vessel off.

[Cited in Greenwood v. The Fletcher, 42 Fed. 504.]

In admiralty. This was an action brought by the owners of the brig Homely to recover as damages a sum the Homely was ordered to pay as salvage. See the case of The Homely [Case No. 6661].

Scudder & Carter, for libellant.
Butler, Stillman & Hubbard, for claimant.

---

[1] [Affirming Case No. 2,562.]
[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]
[3] [Affirmed in Case No. 2,561.]

BENEDICT, District Judge. This action is brought by the owners of the brig Homely, to recover of the tug C. F. Ackerman the damages arising from failure to perform a contract to tow the brig from sea into the port of New York. The evidence shows an employment of the tug and that she took the brig in tow upon a hawser; that shortly after passing the Hook, the brig, while in the tow of the Ackerman and following her, brought up upon the tail of the Romer shoal, whence the Ackerman was unable to pull her off that evening. On the next morning the tug Weed and the Ackerman, together, made fast to the brig and towed her off the shoal. For the Weed's share of that service the brig has been condemned by this court to pay the sum of $625.

The question in this action is whether the Ackerman is liable for this sum to the brig. I am of the opinion that she is liable, and for these reasons: It is quite plain, from the evidence, that the pilot, the master of the brig, and the master of the tug understood that, subject to the general instruction given by the pilot to keep her in deep water, as she drew 14 feet, the knowledge and skill of the tug was relied upon to keep the brig in the proper channel. The averment of the answer is, that a course by compass was given by the pilot; but the testimony, when fairly considered, does not support the averment. The amount of water the brig drew was given, with a direction to keep her in deep water. As to the general direction of the course, there was no choice and it was as well known to the tug as to the pilot. Knowledge on the part of the tug of where the water was deep enough to float a vessel drawing 14 feet, and ability to keep in such a channel, was taken for granted by all. So the tug proceeded, as she herself says, without any instructions as to the course, after the tug's hawser was taken at such a distance that it was not possible for the pilot of the brig to direct her course, and in water selected as a proper channel for a vessel drawing 14 feet. The brig followed behind the tug, and while so following in the course selected by the tug, she grounded. No one was on the stern of the tug to receive orders from the pilot on board the brig. No orders from the brig were given, and it is plain that no orders from the pilot were expected to be given or received. The tug was, therefore, bound to exercise care and skill in selecting a course which the brig could follow in safety, performing the duty she had undertaken and was bound to take. There is no doubt that care and skill on the part of the tug would have carried the brig into the harbor in safety, for the weather was still, the position of the vessels and shoals was known, the depth of water the brig was drawing was also known, and no reason, except carelessness on the part of the tug, can be assigned for the brig going upon the shoal. This carelessness renders her liable for dam-

age resulting, and such damage is the sum necessary to get her off the shoal, namely $625, for which sum the libellants are entitled to a decree.

[NOTE. The claimant of the C. F. Ackerman subsequently appealed to the circuit court, where the decree herein was affirmed. Case unreported.
[For decision granting a motion for summary judgment against Erick P. Lindahl, who, with Thomas Kenny, deceased, was a stipulator for the release of the C. F. Ackerman, see Case No. 2,564.]