BONANNO *v.* THE BOSKENNA BAY. GRAZIANO *v.* SAME. MIRTO *v.* SAME. WESTERVELT *v.* SAME. SAITTA *v.* SAME. MERCADANTE *v.* SAME. SGOBEL *et al. v.* SAME. FOTI *v.* SAME.

*(District Court, S. D. New York.* November 24, 1888.)

**1. SHIPPING—CARRIAGE OF GOODS—GREEN FRUIT—FROST—DELIVERY—NOTICE.**
Previous rulings in *The Boskenna Bay,* 22 Fed. Rep. 662, followed.

**2. SAME—BILL OF LADING—STIPULATION.**
The provision of the bill of lading that the ship may discharge fruit when she is ready, and that the goods shall thereafter be at the consignee's risk, is a reasonable stipulation, and valid, so far as to permit the discharge of so much green fruit as can be removed by the consignee during the day out of danger from frost at night, providing the consignee is given timely notice of the discharge and opportunity to take care of his goods; not otherwise.

**3. SAME.**
On further hearing in behalf of the above libelants, upon satisfactory proof that five of them had such timely notice, *held,* ship not liable for damage to their goods by frost during the night following the discharge; as to the three others, no such proof appearing, the ship was held liable.

In Admiralty. Libels to recover damages to fruit through the alleged improper discharge from the steam-ship Boskenna Bay, on the 21st of March, 1883, in frosty weather.

*Ullo, Ruebsamen & Hubbe,* for Bonanno *et al.*

*Franklin & Clifford* and *A. H. Bartlett,* for Mirto *et al.*

*E. B. Convers,* for claimants.

BROWN, J. After the decision in favor of the libelant in the case of *The Boskenna Bay,* 22 Fed. Rep. 662, (December 12, 1884,) the eight libelants above named, who were also consignees of fruit upon the same voyage, filed, between March 24 and 28, 1885, the above libels to recover for the damages to their fruit, alleged to have been caused by frost through the improper discharge of their goods at the same time as Rolfe's. Considerable testimony has been taken, in addition to that given in *The Boskenna Bay.* The principal facts are the same. The bills of lading, as in that case, provide, among other things, as follows:

"Simultaneously with the ship being ready to unload the above-mentioned goods, or any part thereof, the consignee of the said goods is hereby bound to be ready to receive the same from the ship's side, either on the wharf or quay at which the ship may lie for discharge, or into lighters provided with a sufficient number of men to receive and stow the said goods therein; and in default thereof the master or agent of the ship, and the collector of above port, are hereby authorized to enter the said goods at the custom-house, and land, warehouse, or place them in lighters, without notice to, and at the risk and expense of, the said consignee of the goods after they leave the deck of the ship."

I adhere to the views of the law as expressed in *The Boskenna Bay,* and in the subsequent case of *The Surrey,* 26 Fed. Rep. 791, 795, 796, and the cases there cited.

Upon the testimony in the present case, I find that the 21st of March, the day fixed for the discharge of green fruit, was not fit for discharging green fruit with a view to allowing it to remain upon this covered pier overnight, and that it was negligence in the ship to discharge the cargo on that day without providing for its safety herself, or by sufficient notice to the consignees to enable them to take necessary care of it before night. In *The Boskenna Bay* no express notice to the consignees was proved, and no care of the fruit was taken by the ship. The most important contention upon the present trial is that the consignees had timely notice of the discharge on the 21st, and are therefore concluded by the bill of lading. The testimony is contradictory; the libelants denying notice, or their presence at the dock on the morning of the 21st. Notwithstanding certain discrepancies in the claimants' witnesses, and their mistakes as to some particulars, I do not feel warranted in rejecting such an accumulation of proof as is produced to show that the principal consignees were present. These were Graziano, Bonanno, and Mercadante. Half a dozen witnesses, some disinterested, are positive about Bonanno and Graziano; a less number as to Mercadante, Westervelt, and Day. The employes, also, of Bonanno, Day, and Westervelt are identified as present. Several of these witnesses state particulars from which it is difficult to suppose that they could have honestly mistaken the 21st for the 22d. Finding, as I feel bound to do, that the libelants above named were present during the forenoon of the 21st of March, at the time when the discharge was determined on, or while it was going on, it is immaterial how they received notice of the intended discharge on that day,—whether through the advertisement testified to in the *Boskenna Bay Case*, or by the express notices, which some of the witnesses testify to on this trial. There is no proof of the delivery of express notice except to Bonanno and Graziano, which is testified to by Southwell, certainly a most credible witness. The libelants, who were thus aware that the discharge was to be made on the 21st, were bound, under the specific terms of the bill of lading, to take care of their goods, if they were unwilling that they should remain on the covered dock overnight. They made no attempt to remove them, or to provide for their care. The necessary inference is that they preferred to take the risk of their remaining under that shed overnight, rather than be at the trouble of removing them to a warmer place. There was opportunity to remove the goods, had they chosen not to take that risk. Having this opportunity, the bill of lading devolved that risk on them, and not on the ship; and I cannot hold the bill of lading in this particular so unreasonable as to be invalid. *The Santee*, 2 Ben. 519; *The Kate*, 12 Fed. Rep. 881; *Steam Co. v. Switter*, 17 Fed. Rep. 695, affirmed, 22 Fed. Rep. 560. There is nothing in the circumstances that seems to me incompatible with the finding that the libelants referred to were present during the forenoon of the first day of discharge, although most of them may have been, and doubtless were, present also at the Mediterranean pier, where the Dorset was discharging at the same time. The two places are less than an hour apart. Besides the accumulation of direct testimony as to their presence, there are various circumstances which make

it probable that they came to the pier of the Boskenna Bay, as alleged, upon some previous knowledge of the intended discharge, and expecting it to take place, although I do not find any written notice positively proved as an independent fact,—no copy of any such notice being produced.

In the cases of the principal libelants, moreover, whose claims are from $5,000 to $6,000 each, it is scarcely probable that there would have been a delay of two years in filing the libels had the discharge on the 21st been effected wholly without their knowledge in time to take care of their goods. In the cases of Day and Westervelt it appears that on the trial of *The Boskenna Bay* they testified that their goods were not damaged, to their knowledge. On the present trial this is explained as referring to damage recognized by the custom-house, such as rot and inherent vice. To support this explanation they were permitted to exhibit their letters to their consignors, although not strictly legal evidence. These letters refer to the fruit as "somewhat damaged by frost," but they do not state any claim made, nor expectation of recoupment for such damage. The explanation of their former testimony is not sufficient. There was no reference to custom-house damage in the *Boskenna Bay Case*, or in the questions which the witnesses answered on that trial. The only damage in question was damage by frost alone. The circumstances, as they appear on the present trial, furnish a much more probable explanation, namely, that though their goods may have been somewhat damaged by frost, no claim against the ship was contemplated, for the reason that they had knowledge of the discharge, and practically acquiesced in it; or, at all events, took no further care for their goods, such as the bill of lading required of them. The libels, therefore, of Bonanno, Graziano, Mercadante, Sgobel and Day, and Westervelt, must be dismissed. The other libelants I do not find either identified as present on the 21st, or notified of the intended discharge. As to them, therefore, the risk of the ship remained, and they are entitled to such damages as they can prove to have come to their goods from frost. Several witnesses testified that, where part of a cargo is damaged by frost, the auction prices of the whole cargo are injuriously affected. I cannot recognize this as a legal basis of recovery as respects boxes not actually frost-bitten. If allowed, it would sanction the selling of a whole cargo as damaged goods because a part was affected. In the case of *The Marinin S.*, 28 Fed. Rep. 664, 668, affirmed 32 Fed. Rep. 918, it was held that, where the good and the damaged were easily separable, a division should be made. An order of reference to compute the damages may be taken in the cases of Saitta, Mirto, and Foti, with costs. The other libels are dismissed, with costs.