## GREENWOOD v. THE FLETCHER AND THE GRAPESHOT.[1]

*(District Court, S. D. New York. May 14, 1890.)*

1. COLLISION—DAMAGES—SALVAGE MONEY—INTEREST—COSTS.

When a vessel was sunk by fault of another vessel, salvage money paid out by the owner of the sunken boat is a proper item of damage to be allowed against the wrong-doer, with interest thereon, as well as on other expenses of repair from time of payment, but not costs or counsel fees paid in defending a suit for such salvage.

2. SAME—DAMAGE TO BOILER—EVIDENCE.

The boiler, on being removed from a vessel which had been sunk by collision, was found to be cracked. Libelant claimed that this was caused by the sudden submersion of it in cold water while it was hot. *Held,* that the claim, being of an unusual kind, ought to be sustained by evidence correspondingly convincing. The evidence not meeting this requirement, *held,* that this item should be disallowed, together with such demurrage as had been allowed for detention while repairing the boiler.

In Admiralty. On exceptions to commissioners' report.

*Hyland & Zabriskie,* for libelant.

*Wilcox, Adams & Macklin,* for claimants.

BROWN, J. 1. The libelant's canal boat Hebe having been sunk in the North river through the fault of the above defendants' vessel, (38 Fed. Rep. 156,) a claim for salvage services to the sunken boat afterwards arose, which was allowed in the district court of New Jersey to the extent of $110, with $39 costs of suit. In the assessment of damages, the libelant has been allowed this salvage charge, but was disallowed the costs included in the decree, as well as the much larger costs for the fees of his own counsel incurred in the defense of that suit. The precise question as to both these classes of costs arose in the eastern district of New York in the case of *The Homely* and *The C. F. Ackerman,* 8 Ben. 495–498, where both were disallowed as items of damage against the wrong-doer, and this decision was affirmed by Mr. Justice HUNT on appeal to the circuit court. I am not at liberty to depart from that adjudication.

2. *Net Freight.* As respects the sum of $191.20 for the loss of the freight on the pending charter, I think there should have been a further deduction for expenses for the wages and board of the master, engineer, and deck-hand, for six days, amounting to $36. This would leave $165.-50 for net freight, which is allowed, with interest.

3. *Boiler.* I am not satisfied with the evidence in support of the claim for damages to the boiler. The boiler rested vertically on top of the furnace. After the collision the boiler was taken out, and the lower end, or crown sheet, was found to have two or more cracks in it, which it is estimated would cost $262 to repair. The libelant contends that these cracks were caused by the sudden submersion of the boiler in cold water while it was working hot. No previous instance is shown, either in the adjudications or in the evidence, where the crown-sheet of such

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

a boiler was cracked from such a cause; yet the sinking of tugs, under a similar circumstance, is not uncommon. The claim, being, therefore, of an unusual kind, ought to be sustained by evidence correspondingly convincing. I do not think the evidence meets this requirement. The evidence of the defendants' experts, that such cracks could not be caused in this manner, is quite as strong as the testimony of the libelant's experts, and seems to me much more probable; inasmuch as the only access of water to the under side of the crown-sheet was through the door of the furnace, and over and through the raging fire within it. There is no proof, and I very much doubt, that any water that thus made its way to the crown-sheet would be cold enough to harm it, or would, in fact, be cold at all. All the witnesses also say that the same cracks might be caused by dirt and grease.

The condition of the crown-sheet had not been examined for at least several months before the accident. At that time Hogan repaired a bulge in the furnace. He says he also examined the boiler or tubes, and sounded them. But the examination must have been casual, if the boiler was the same; for this boiler had several ferrules about the tubes, and Hogan says that at the time when he examined it there were no ferrules on the tubes. The engineer and deck-hand both state that the boiler in use at the time of the accident leaked; and, as I understand the testimony, there was found after the collision a further bulge in the furnace, showing injury since Hogan's last repairs. Much testimony was given to show repairs to the boiler during several years previous; but near the close of the libelant's testimony it appears that the boiler in the Hebe at the time of the accident was not the boiler on which those repairs had been made, but was an old boiler taken out of the Marshal, and put into the Hebe; and, as the Marshal had a new boiler in 1888, it is probable that of the Marshal was put in the Hebe about that time. The fact that the libelant should introduce testimony as to repairs to a boiler which he knew was not the one that was in the Hebe at the time of the accident detracts from the credit to be given to his own testimony.

The fact also that, after the accident, the boiler in question was taken out of the Hebe without any knowledge of these cracks, and therefore not in consequence of them, and so far appears without any reason, if it was previously sound or supposed to be sound, (for removal was not necessary to repair a bulge,) that no notice of any survey was held upon it, and that no claim to any such amount as is now claimed was then presented, and that no repairs have since been made on it, tend to confirm the belief that the boiler before the accident was known to be old, worn, and out of repair, and not fit for much longer use. To my mind, there is no satisfactory proof that any material change in the condition of the boiler was produced by sinking, and I therefore disallow this item, together with 10 days' out of the 15 days' demurrage allowed for the repair of the boiler and engines, 5 days being sufficient for the repair of the engine. The libelant is entitled to interest on the item of salvage; on the net freight, as above corrected; on the amount allowed for repairs on the hull from the time of payment, March 13, 1889; and

on the demurrage for 19 days, at the rate allowed by the commissioner, which agrees with my own computations. The other items are allowed as reported, with interest.