THE ENERGIA.

THE WILD PIGEON.

INSURANCE CO. OF NORTH AMERICA et al. v. THE ENERGIA and THE WILD PIGEON.

(District Court, S. D. New York.　April 7, 1894.)

COLLISION—DAMAGES—AVERAGE CHARGES AGAINST CARGO IN FOREIGN PORT.

　　A cargo owner may recover from the ship, as damages for a negligent collision in American waters, average charges by reason of the collision, legally assessed against his cargo in the foreign port of destination, although such charges could not have been allowed, on an adjustment of average under our law, because of the ship's fault.

This was a libel by the Insurance Company of North America and others against the steamship Energia and the schooner Wild Pigeon for damages by collision between the vessels to the cargo of the steamship, of which libelants were insurers. The steamship was held in fault. 56 Fed. 124. The question of libelants' right to recover, as damages, average charges upon the cargo, was submitted upon the pleadings and a stipulation as to the facts.

　　Butler, Stillman & Hubbard and Mr. Mynderse, for libelants.

　　Wing, Shoudy & Putnam, for respondents.

BROWN, District Judge. The libelant company was insurer of a shipment of 68,838 cases of oil by Carleton & Moffat on board the steamship Energia, deliverable at Shanghai, China. In going down New York Bay, the steamer met with a collision, by her own fault, which compelled her to return to New York for repairs. The Energia, 56 Fed. 124. Pending such repairs, about 30,000 cases had to be discharged, of which 16,508 were so damaged by the collision that they were ordered to be sold in this port, resulting in a net loss of $8,528.57. The libelants, representing the interest of Moffat & Co., claim to recover not merely the above item of damage, about which there is no controversy, but certain additional charges upon the cargo for general and particular average, resulting from the collision. The question of damages is submitted upon the pleadings, and the written stipulation as to the facts, which, besides those above stated, recites as follows:

　　"The sound portion of Carleton & Moffat's shipment having been partly discharged pending repairs to the Energia, was reshipped and was carried to and delivered at Shanghai, China, to the consignees under the bills of lading.

　　"At the time of delivery at Shanghai, and as a condition of delivery, a cash deposit was exacted from the consignees by the ship owners to cover general average and special charges, to be stated under an adjustment to be made in London. This was under a practice prevailing at Shanghai.

　　"The law of Great Britain was in force in Shanghai under the jurisdiction of consular courts.

　　"By such adjustment of the expenses incurred in New York following the collision the general average charges upon the sound portion of the shipment are $953.11, and the special charges thereon, consisting of certain stevedore and appraisers' bills, amount to $636.06.

　　"The above general average and special charges have been paid or will be

retained by the ship owners from the cash deposits made by consignees at Shanghai, upon the ground that they are lawfully collectible notwithstanding any negligence in respect to the collision.

"(In the above stated item of general average and special charges no account is taken of the damage alleged to have been sustained by about 6,000 cases of Carleton & Moffat's shipment, by rain while on lighters at New York, after the collision. The said cases, about 6,000 in number, were not reshipped and were sold in New York.)

"The libelants claim the direct damages to the said 16,508 cases, amounting to $8,528.57, with interest thereon from the 22d day of December, 1892, and the said general average and special charges amounting to $1,589.17, with interest thereon from this date.

"The claimants of the steamer object to any allowances to the libelants in respect to such general average and special charges.

"English authorities may be referred to as showing the law of Great Britain on the point of general average and special charges being collectible."

I do not perceive any sound reason in justice or in common sense, why both the general and the particular average charges, to which the residue of the cargo is legally subject in Shanghai, should not enter into the damages to be recovered for this collision. The rule of damages here is "restitutio in integrum" (The Potomac, 105 U. S. 630); and this rule as plainly demands compensation for a charge or expense lawfully imposed upon the sound part of the cargo, as for a deterioration or physical injury to another part, when both are equally the direct results of the collision. The loss to the cargo owner is alike in both; and both, upon the stipulated facts, are alike the direct and natural consequence of the collision. It is immaterial that the charge or expense in dispute has to be paid at Shanghai, instead of here; or that it is payable to the ship owner who is in fault, so long as the charge is a lawful one where it arises. If the exaction were an illegal one, no claim for it would here arise; for then it would not be the proper and natural result of the collision, but of a new agency, and an independent wrong, for which an independent remedy must be sought. But by our law, as well as by the English law, all average charges for the voyage are to be determined and adjusted by the law of the place of destination, which in this case was Shanghai, governed by English law. See The Mary Thomas [1894] Prob. Div. 108. From the moment of collision, therefore, the sound part of the cargo became liable to these average charges, should it ever reach its destination; and as that destination has been reached, that item of damage has become fixed, and is, therefore, recoverable here as one of the direct and necessary legal results of the collision.

It is urged that the charges referred to arise from the law of average, and not from the collision; and the case of The Marpessa [1891] Prob. Div. 403, is cited as authority for this contention, where the average charge for a jettison was regarded as not the direct result of the collision, but as arising from the peculiar relation of ship and cargo. A case of jettison is to some extent peculiar and exceptional, and not like this, a charge for services rendered to ship and cargo, for which an ordinary right of action at law would arise; though I confess myself not satisfied with the reasoning or the decision in the case of The Marpessa. The loss seems to me as

direct as the loss of an existing charter, or of profits under a fixed contract, which are here constantly allowed. Williamson v. Barrett, 13 How. 110, 112; The Belgenland, 36 Fed. 504; The City of Alexandria 40 Fed. 699.

A charge paid for a salvage service, made necessary by a collision, is strictly analogous to the present claim, so far as respects its directness; and the charge for salvage is always allowed as an item of damage against the ship in fault. The Ackerman, 8 Ben. 496; The Fletcher, 42 Fed. 504; La Champagne, 53 Fed. 398. It might as well be claimed that the law of salvage was in such a case the cause of the salvage charge, as that the law of average is the cause of the average charge against the cargo in a case like this. It is not the law, but the facts and the relations which the law recognizes, that are the causes and the grounds of the average charge.

The grounds of the general average charges in this case were the necessary services and expenses rendered to and for the ship and cargo upon their return to this port, as a port of refuge; the charges were made necessary by the collision, and by nothing else; the particular charges were for the cargo alone. If the adjustment of average could have been made here, those charges would not have been allowed against the cargo, because of the ship's fault (The Ontario, 37 Fed. 220; Snow v. Perkins, 39 Fed. 335; Ralli v. Troop, 37 Fed. 890); but as the adjustment is lawfully made under a foreign law, which does not recognize any liability in the ship under the exceptions of negligence in the bill of lading, and therefore allows her to collect these charges from the cargo in the first instance, our law, which takes note of the foreign law as a fact, and as one of the circumstances of the voyage on which this collision occurred, must, in order to give complete restitution, allow the cargo owner to recover back the charge which the collision, under the foreign law of average adjustment, has imposed upon the cargo, because that charge was the necessary result of the collision according to the law of the destination upon the voyage on which the ship was engaged. This does not at all reverse the foreign law of adjustment; it simply recognizes that law as a fact, and the payment of average as a necessary result of the collision. Our law, as the law of the forum, must govern in the adjustment of damages upon a collision happening here (The Scotland, 105 U. S. 29, 30); and hence full restitution must be given according to our law alone.

Decree for the libelants, including the charges claimed.