THE MASON.

THE CASCADE.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

No. 95.

1. TOWAGE ⟨key⟩15(2)—GROUNDING OF TOW—EVIDENCE OF NEGLIGENCE.
That tugs in moving in the daytime a vessel having at the time no motive power of her own, in harbor waters and in good weather, run her aground, warrants an inference of negligence on their part.

2. ADMIRALTY ⟨key⟩118—REVIEW ON APPEAL—FINDINGS OF FACT.
When an admiralty court has rejected the positive testimony of witnesses who were in the best position to know exactly what the truth was as to some disputed fact and accepted the testimony of others whose opportunity to know the truth was manifestly not so good, and does this on the expressed ground that the testimony rejected does not harmonize with the inherent probabilities of the case, there is no reason why the appellate court should not review the testimony unembarrassed by the finding as to such facts.

3. ADMIRALTY ⟨key⟩73—SUIT FOR INJURY TO VESSEL—DAMAGES—BURDEN OF PROOF.
The party found in fault upon the merits in a suit for injury to a vessel, although otherwise than in collision, must bear whatever inconvenience of hardship there may be in proving the exact amount of damages sustained.

4. ADMIRALTY ⟨key⟩73—SUIT FOR STRANDING OF TOW—DAMAGES—EXPERT TESTIMONY—DOCUMENTS.
In cases of stranding, damage is commonly received in places where no eye can see that which happens at the time of harm, and the best evidence as to what was injured, and often excellent and persuasive evidence as to how the injury occurred, is that of competent and experienced men who subsequently examine the hurt, and on these issues not only the oral testimony of marine surveyors, but their reports or surveys, as documentary evidence are admissible.

5. TOWAGE ⟨key⟩15(2)—SUIT FOR STRANDING OF TOW—DAMAGES—EVIDENCE.
When a vessel takes the ground, loaded, and lies there for a week, and is then found to have an injured plate, or places showing recently made breaks or deflections from the normal, this is enough to establish an apparent causal connection between the stranding and the injury to the plates, and any other cause for the injury, admittedly existing, is by all experience the unusual cause, and a claim that the injury was due to such cause should be sustained by convincing evidence.

Appeal from the District Court of the United States for the Western District of New York.

Suit in admiralty by the Kinsman Transit Company, owner of the steamer Mathew Andrews, against the steam tugs Mason and Cascade; the Hand & Johnson Tow Line, claimant. From the decree, both parties appeal. Claimant's appeal dismissed, and libelant's appeal sustained, with directions to modify decree.

See, also, 221 Fed. 799.

Libelant's steamboat Mathew Andrews had lain up in Buffalo Harbor during the winter of 1908–09. On March 13, 1909, the tugs above named were employed to remove her from her anchorage to a loading berth. In so doing, within harbor limits and during good weather, they ran her aground, and it

⟨key⟩For other cases see same topic &°KEY-NUMBER in all Key-Numbered Digests & Indexes

required salving operations extending over about a week to release her. This action was brought to recover the damage and expense resulting from this stranding. The court below held the tugs liable and sent the assessment of damages to a commissioner. Claimants did not deny that some damage had been received, and, especially that the Andrews had struck something that broke one of her propeller blades, although she was not under her own steam when the tugs stranded her. She was loaded, having had a "storage cargo of grain" in her hold during the winter.

It appeared that in 1907 the steamboat had taken the ground and received certain injuries to her bottom, which had been repaired or patched by cement on the inside of the plating. It was proven that she had not subsequently grounded to the knowledge of her owners until March, 1909, and under the circumstances above stated. Very shortly after the stranding, three marine surveyors examined the Andrews, made their reports in the usual form, stating that she had suffered damage by stranding additional to that received in 1907, and patched with cement as above set forth. All of these surveyors testified to their examination, the truthfulness of their reports, and gave their reasons for being able to distinguish between old damage (i. e. that of 1907) and recent injury to the plating of a steel vessel. The test used by them was substantially the difference in color between cracks, indentations, or corrugations that showed dark or chocolate colored and those bright and showing metal newly exposed.

Claimants contended that the place where the Andrews had taken the ground showed a soft or sandy bottom, but that she had spent the winter at an anchorage where she might have taken the ground under some conditions of the wind and where the bottom would have been more likely to injure her than the sand or mud forming the major portion at all events of the bottom at the place of stranding.

The commissioner's report, based upon a reading of depositions (so far as the surveyors were concerned), was that libelant had not "clearly shown" that the bottom damage claimed for was attributable to the stranding of 1909. He regarded the surveyors' testimony as "speculative" and an "arbitrary conclusion," for "it was not thought that the beaching of the boat at the entrance of the Buffalo Harbor on a mud bank produced any of the injuries to the bottom of the boat claimed herein." Accordingly, bottom injury, the cost of repairing which was $1,003, and the attendant cost of drydocking, were disallowed, and the commissioner's report was confirmed by the District Judge. From final decree accordingly claimants appealed on the merits, and libelant in respect of the disallowance of said bottom damage and drydocking.

Harvey L. Brown, of Buffalo, N. Y. (Laurence E. Coffey, of Buffalo, N. Y., of counsel), for claimant.

Duncan & Mount, of New York City (Oscar Dibble Duncan and Warner C. Pyne, both of New York City, of counsel), for libelant.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] The appeal of claimant presents no question of law. It is asserted, and at once admitted, that the tugs were liable only for the absence of ordinary care and skill. Such absence was found below because, in good weather and harbor waters, the tugs in broad daylight put aground a vessel having at the time no motive power of her own, and completely under the control of the tugs. When·these facts were shown claimant gave no evidence. If negligence is not inferable from such circumstances, it is difficult to imagine anything that could justify the conclusion short of a proven intent to injure another's property.

Libelant's appeal also raises questions of fact, but further requires consideration of the competency and weight of a kind of testimony commonest in the admiralty and not always easy to appraise at its proper value; viz., the expert evidence of marine surveyors.

On assessment of damages herein, whether the vessel was injured, or injured by the fault of claimant's tugs, were points settled by the interlocutory decree; the questions were only how much she had been injured, and what it had cost to repair such injury.

The single issue, framed by discussion rather than pleading, was whether the damage to one particular part of the Andrews' bottom was caused by the stranding of March, 1909; the cost of repair was practically not denied.

That an injury existed after that stranding was also admitted; but that it resulted from resting on the bottom of Buffalo Harbor in March, 1909, rather than at some other time or in some other place, was held not proven.

It was amply shown that the newly injured portion of the Andrews did rest on the ground at the time mentioned; and, also proved that whatever the general nature of the bottom at the place in question, there was something there hard enough to break a propeller that was not turning over.

This was positive evidence; but there was no direct evidence at all that, while the Andrews lay at her winter anchorage, she was ever aground. The argument was that from the reading of the water gauge kept somewhere in Buffalo Harbor, as compared with the draft of the Andrews, she must have been aground at least on a day in February, 1909. Considering the records in evidence, we do not think they establish the allegation or suggestion.

[2] This is a situation for applying our ruling in The Albany, 81 Fed. at 968, 27 C. C. A. 28, viz.:

Though a finding of fact made below will not ordinarily be disturbed especially when the lower court heard and saw witnesses, yet when that court "has rejected the positive testimony of witnesses who were in the best position to know exactly what the truth was as to some disputed fact, and accepted the testimony of others whose opportunity to know the truth was manifestly not as good, and does this on the expressed ground that the testimony rejected does not harmonize * * * with the inherent probabilities of the case, there is no reason why the appellate court should not review the testimony unembarrassed by the finding as to such facts."

In this case, as stated, the evidence of the marine surveyors was taken by deposition.

[3] It is assuredly a settled general rule, though oftenest applied in collision, that a fault in one party, once firmly established, casts upon that party the burden of showing any contributing fault committed by his opponent. The Persian, 224 Fed. 441, 140 C. C. A. 135. The analogue of this rule is applicable to matters of damage, wherefore as was stated in The Mayflower, 1 Brown, Adm. 376, Fed. Cas. No. 9345, affirmed as The Dove, 91 U. S. 381, 23 L. Ed. 354, the party in fault upon the merits of the case must bear whatever inconvenience or hardship there may be in proving the exact amount of damages sustained; and, if the party not in fault "derives incidentally

a greater benefit than mere indemnification, it arises only from the impossibility of otherwise affecting such indemnification without exposing him to some loss or burden which the law will not place upon him."[1]

[4] In cases of stranding, damage is commonly received in places where no eye can see that which happens at the time of harm, and in the nature of things the best evidence as to what was injured, and often excellent and persuasive evidence as to how the injury occurred, is given and must be given by competent and experienced men who subsequently examine the hurt. This being common knowledge among those accustomed to maritime affairs, it has long been the practice to admit as evidence, not only the oral testimony of marine surveyors, but their reports or surveys as documentary evidence. As it was put by Judge Addison Brown in The City of Chester (D. C.) 34 Fed. 429:

"The surveys in this case were, as I understand, the usual surveys which were a necessary preliminary toward making the repairs, and should therefore be allowed."

When it comes to questions of amount, often most bitterly contested, it is settled that expert evidence (and such is the nature of a surveyor's testimony) may be used to impeach actual expenditures by showing that they were carelessly, extravagantly, or even dishonestly incurred. Of this The Umbria (D. C.) 148 Fed. at 283, affirmed in this court 153 Fed. 851, 53 C. C. A. 33, is a good instance. The testimony of a surveyor or other maritime expert is often regarded as an admission by one party or the other, when both sides of a controversy appoint surveyors to consider the nature and amount of damage. Such surveys are always evidence, though not conclusive. The Elmer A. Keeler, 194 Fed. at 341, 114 C. C. A. 331.

Post hoc, ergo propter hoc, is often poor reasoning; but it has some value, and the process of apportioning evidential difficulties must be conducted in the light of experience and common sense.

[5] When a vessel takes the ground, loaded, and lies there for a week, and is then found to have an injured plate or places showing recently made breaks or deflections from the normal, this is enough to establish an apparent casual connection between the act of stranding and the injury to the plating. See The Vigilant (D. C.) 10 Fed. at 766. Any other cause for the injury admittedly existing is by all experience the unusual cause, and a claim of an unusual kind "ought to be sustained by evidence correspondingly convincing." Per Brown, D. J., in The Grapeshot (D. C.) 42 Fed. at 505. See, also, The Margaret J. Sanford (C. C.) 37 Fed. at 152, per Wallace, J.

For these reasons, we are (1) required to consider the evidence on the reference in full; and, having done so, are obliged to hold (2) that libelant has given competent and persuasive evidence that the damage in question was occasioned by the stranding of March 1909; (3) that claimants have not shown any other even probable cause for

---

[1] This language was taken by Longyear, J., from Dr. Lushington's judgment in The Gazelle, 2 W. Rob. at 284.

said damage; and (4) that the testimony of the marine surveyors was neither "arbitrary," nor "speculative."

The libelant's appeal is sustained, and that of claimant dismissed, with one bill of costs to libelant. The cause is remanded with directions to modify the decree in conformity with this opinion; libelant to have interest on the damages as increased.