### THE WESTCHESTER.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

#### No. 29.

1. TOWAGE ⊙⇒11(1)—BREAKING OF PROPELLER SHAFT—NEGLIGENCE.

    The unexplained breaking of the propeller shaft of a tug in charge of a tow cannot be deemed an inevitable accident, merely because a piece was found broken out of the propeller, but the break must be deemed the result of the fault of the tug.

2. TOWAGE ⊙⇒12(1)—TOWS—NEGLIGENCE.

    For a tow, in charge of a tug to be without an anchor is a fault of the tow.

3. TOWAGE ⊙⇒12(2)—ACCIDENT—DIVISION OF DAMAGES.

    Where a tow was at fault, because not equipped with an anchor, and the tug was at fault and liable for the breaking of the propeller shaft, and it could not be said with reasonable certainty that the stranding of the tow could have been avoided, had it been equipped with an anchor, *held*, that damages should be divided.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4.** TOWAGE ⊙═══13—SURVEY OF VESSEL—NOTICE.

Possible claimants, such as the owner of a tow, should be notified of a survey of a tug, whose propeller shaft broke and allowed the tow to be stranded.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by James Dwyer and others against the steam tug Westchester, her engines, etc., claimed by the Red Star Towing & Transportation Company. From a decree for claimant, respondents appeal. Reversed and remanded, with instructions to award libelant half damages.

Libelants' boat Sinclair, loaded, was in tow of the Westchester bound from the Harlem River to West Farms when the tug became disabled by the breaking of her propeller shaft in the bushing. This occurred between Mill Rock and Ward's Island shortly before 10 a. m. The stage of the tide does not appear. The disaster left the tow helpless and the Sinclair had no anchor. The Westchester dropped her anchor, but the hawser parted. The drifting barge grounded on the Hog's Back, receiving injuries to recover for which this action was brought. Investigation after accident showed a small piece broken out of the Westchester's propeller. The break in the shaft was clean and no flaw was discovered. In the normal operation of machinery no especially hard wear would have been put on the shaft at the place where it broke. The tug's engine was about 20 years old, the shaft was 4½ inches in diameter, which is heavier than ordinary for vessels of this class, and had been in use for a considerable number of years, but there is no evidence showing its exact age. The record shows that the Westchester was maintained in good condition, but it does not appear when the propeller shaft had last been overhauled or inspected. The tug broke down in a channel way about 800 feet wide, containing not over 30 feet of water. A survey was held on the tug, but no notice of the holding thereof was given to the libelant, although it was known that damage had occurred. The District Court dismissed the libel on the ground of inevitable accident, and libelant took this appeal.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellants.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). **[1]** From the fact that a piece was found broken out of the tug's propeller it is argued that she must have struck a submerged log or other similar obstacle; but there is no evidence on that point, and we cannot infer such an obstruction from the mere chipping of the propeller blade. Nor is there any evidence to show that a shock insufficient to materially injure the propeller should have broken a good shaft. We cannot concur with the finding of the court below that this case is an instance of inevitable accident. It is enough to refer to our judgment in Re Reichert Towing Line, 251 Fed. 214, —— C. C. A. ——, decided since the decree appealed from was entered. The facts now before us are much less favorable to the tug than were those which we found insufficient in the decision just cited.

**[2, 3]** It was, however, a plain fault in the Sinclair to be without

an anchor (The Sunnyside, 251 Fed. 271, —— C. C. A. ——), and we discover no excuse for its absence; but if an anchor had been on board, and had been used, it cannot be said with reasonable certainty that stranding would have been avoided.

The tide must have been of considerable strength, for the tug's cable parted; anchors are habitually carried at the bow, and the Sinclair was being towed stern first; instant action was necessary, the available time short, and whether under such circumstances the maneuver could have been successfully performed is doubtful.

To sustain the result, if not the reasoning, below, The M. E. Luckenbach (D. C.) 200 Fed. 630, affirmed 214 Fed. 571, 131 C. C. A. 177, is pressed upon us. It is true in one sense that here, as there, "concurrent faults"—i. e. negligent acts contemporaneously operating to produce injury—do not exist. But the word relied upon, "concurrent," must be taken as synonymous with "contributing," and in both The Luckenbach and The Sunnyside, supra, it was found as matter of fact that, despite a fault which put a tow adrift, there would have been no resulting injury, had it not been for a new and independent piece of negligence; therefore the wrongdoer first in point of time was held not responsible, although not innocent.

Here we infer negligence (i. e., unseaworthiness) in the tug from the unexplained breaking of her shaft, and find negligence admitted by the barge's admission of no anchor. When faults are thus shown, all the guilty, if their fault could have caused the injury, must, to escape liability, affirmatively show that they did not, in point of fact, cause the same. The Madison, 250 Fed. 852, —— C. C. A. ——. Neither party has borne that burden, in this case; therefore the damages and costs below should be divided.

[4] The procedure of claimants in giving no notice to libelant of the survey on the Westchester is objectionable and inexplicable, if it was expected to use that survey as a piece of evidence. The importance of surveys in maritime litigation has often been recognized. The Mason, 249 Fed. 721, —— C. C. A. ——. But, to say the least, it greatly diminishes the value of any survey considered as documentary evidence, and (even if the surveyors are called as witnesses) creates an air of unfairness about the whole proceeding, to exclude therefrom any known person who may claim against the injured res or have suit brought against him by reason of that injury. The matter is not important in this cause; it is mentioned because it is very important in proper admiralty practice.

For the foregoing reasons the decree is reversed, with the costs of this court, and the cause remanded, with instructions to award libelant half damages; the costs below to be divided.