## THE ROSALIA.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

### No. 152.

1. Shipping ☞141(3)—"Peril of the sea," within exception of bill of lading, defined.

   A "peril of the sea," which forms a good exception in a bill of lading, means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

2. Shipping ☞132(5)—Claim that damage was due to unexpected force of expected rough weather should be sustained by convincing evidence.

   The claim that a hatch covering or temporary bulkhead gave way, damaging the cargo, through the unexpected force of expected rough weather, where the rest of the ship was substantially uninjured, is one of those unusual claims, which ought to be sustained by evidence correspondingly convincing.

3. Shipping ☞132(3)—Carrier has burden of showing damage to goods receipted for in good order arose from excepted peril.

   In an action for breach of a contract of carriage expressed in a steamship bill of lading, the bald fact of damage to goods receipted for in good order raises a presumption of unseaworthiness or negligence, and makes it the duty of the carrier affirmatively to show that the damage arose from an excepted peril, and the carrier is not excused if the matter remains doubtful, whether the doubt exists as to the nature of the occurrence or the sufficiency of the cause assigned.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Shipping ⬥132(5)—Proof of damage to cargo from sea water is decisive against carrier.**

In an action for damage to tobacco covered by a steamship bill of lading, the fact, when established, that it was wet by sea water, without further explanation, is decisive against the carrier.

5. **Appeal and error ⬥1022(1)—Finding of commissioner, approved by District Court, not to be disturbed unless manifestly wrong.**

A commissioner's findings, which have been reconsidered on exceptions and approved by the trial court, will not be disturbed by the Circuit Court of Appeals, unless manifestly wrong.

6. **Evidence ⬥486—Opinion evidence of value admissible.**

As a general rule opinion evidence as to value is admissible.

7. **Admiralty ⬥73—Court not bound by common-law rules of evidence.**

In admiralty, the court is not bound by all the rules of evidence followed in courts of common law, and where justice requires it may take notice of matters not strictly proved.

8. **Evidence ⬥525—Opinion evidence of value of damaged tobacco admissible in admiralty.**

In a suit in admiralty for damages to a cargo of tobacco from sea water and coal dust, expert evidence as to the value of the damaged tobacco was admissible, where the physical separation of the good and bad tobacco would be slow and expensive.

9. **Evidence ⬥571(7)—Opinions of experts as to value not inadmissible, because shown to be wrong in part.**

Where experts, testifying as to the value of tobacco damaged by sea water and coal dust, had made an examination and estimated the amount of the injury, the fact that their estimates were shown to be too high with respect to certain bales by the physical separation of the wet and dry tobacco did not require rejection of their testimony as to the damage to other bales, but went only to its credibility.

10. **Evidence ⬥219(1)—Participation in determinination of amount of damage not admission of liability.**

A steamship owner's participation in a survey of damaged cargo by the consignee's insurers would not constitute an admission of its liability for the damage.

11. **Evidence ⬥333(7)—Invoice value of goods may be shown by invoice on which they are entered at the custom house.**

Where, under the steamship bill of lading, it is necessary to show the invoice value of damaged tobacco, it can be proved by the invoices on which entry was made at the custom house, in view of the safeguards thrown around such invoice.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the American Tobacco Company against the steamship Rosalia, her engines, etc., claimed by the Societa Anonima Di Navigazione, Adriatica, in which the Societa Anonima Transporti Mestre was impleaded. From a decree for the libelant, the claimant appeals. Affirmed.

Action is by the consignee of a large quantity of leaf tobacco shipped at Patras, Greece, and brought by the Rosalia to New York under bills of lading which recited receipt in good condition and contained the usual exception against perils of the sea. On arrival much of the tobacco in hold No. 4 was wet with sea water, while some of that in hold No. 2 was also wet and more soiled with coal dust.

The steamer arrived in the end of December, having had a rough winter passage. While the weather was continuously bad, and the passage slower

than usual, the lower court declined to find that the vessel had passed through any great or destructive storm, and with this finding we agree. It is not denied that, beyond breaking a steering chain, the steamship received no structural injury. Some 13 days before arrival in New York, the wedges holding in place the bars over the tarpaulins on No. 4 hatch loosened, and the tarpaulins themselves became loose, at a time when the sea was washing freely over the deck. It is asserted by claimant that the sea water in hold No. 4 came in for this reason; no other explanation is offered. The wet tobacco in hold No. 2 was near the hatchway; whether the dampness came from sea water or sweat was a matter of contest at trial. The lower court held that the cargo was wet with sea water, and we agree with that finding.

The more extensive damage in hold No. 2, however, was caused by coal dust. The steamship had taken on as much coal as possible in England, and obtained additional bunkers by erecting a temporary wooden bulkhead in hold No. 2 and filling one of the spaces thus created with coal; the tobacco was in the other. The coal so carried was Cardiff, which is easily reduced to a greasy dust. There is evidence that no coal dust had been observed after coal had been carried from England to the Mediterranean, and that at Patras the bulkhead was in good condition. On arrival at New York, some of the iron stanchions supporting this bulkhead were found bent, and claimants allege that this was the result of sea peril, and the only reason for separation of the boards composing the bulkhead and the consequent distribution of coal dust over the tobacco.

We find, on conflicting evidence, that the bulkhead was not so constructed as to secure cargo near it from coal dust; that weather sufficiently severe to bend the stanchions would certainly have shifted cargo, and injured the steamship in places far more directly exposed to storm than the interior of a hold.

An interlocutory decree for libelant having been entered, very prolonged hearings were had before the commissioner as to damages. It was testified, without contradiction, that if each wet and dusty bale of tobacco had been sold as damaged stock the money loss would have been very much greater than that for which recovery was allowed.

The method of adjusting loss was this: Asknowledged experts in the business opened and examined each wet bale showing signs of damage, and examined, without (for the most part) opening, the dusty bales, and then agreed upon a certain percentage of injury for every bale. Those bales, however, which showed an injury of 10 per cent. or more were forwarded in bond to Canada, where less drastic and more civilized customs laws permitted the physical separation of the wet from the dry tobacco, the destruction of the wet, and the avoidance of duty payment on the part destroyed. It was found, when each bale had been treated in this way, that the destroyed tobacco was not so large a percentage of the whole as was the estimate of the experts. To reduce the damages to money, it was necessary to show (under the terms of the bill of lading) invoice value. This was done by offering in evidence the invoices upon which entry of the tobacco had been made at the custom house.

Claimant, having appealed from the final decree, alleges as error: (1) All the damage received was due to peril of the sea; (2) the method of ascertaining damage and the amount thereof was unlawful; (3) the quantity of injured tobacco allowed for was too great; (4) there was no legal proof of invoice value.

Butler, Wyckoff & Campbell, of New York City (Homer L. Loomis, and Joseph A. Barrett, both of New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (William H. McGrann and George M. Lanning, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The decisions of this court already contain two accepted definitions of the phrase "peril of the sea." The Warren Adams, 74 Fed. 415, 20 C. C. A. 486; The Giulia, 218 Fed. 746, 134 C. C. A. 422. They need not be repeated, further than to insist that the peril which forms a good exception in a bill of lading means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety.

[2] It is true that the strain of long-continued storm may injure some one piece of apparatus, good of its kind, while leaving the rest of the ship substantially unhurt. The Charlton Hall, 207 Fed. 343, 125 C. C. A. 116, is an example. But this is very rare; and when it is said that a hatch covering or temporary bulkhead gave way through the unexpected force of expected rough weather, the assertion belongs to that class of unusual claims, which "ought to be sustained by evidence correspondingly convincing." The Grapeshot (D. C.) 42 Fed. 505.

[3] Since this is an action for breach of a contract of carriage expressed in a bill of lading, it is to be remembered that the bald fact of damage (such as exists here) to goods receipted for in good order, raises a presumption of unseaworthiness (The Warren Adams, supra), or of negligence (Herman v. Compagnie Generale, 242 Fed. 859, 155 C. C. A. 447). It is the duty of the carrier under the general maritime law (not to dwell on the Harter Act [Comp. St. §§ 8029–8035]) affirmatively to show that the damage arose from an excepted peril; if the matter remains doubtful, the carrier is not excused (The Edwin I. Morrison, 153 U. S. 212, 14 Sup. Ct. 823, 38 L. Ed. 688), and this is true, whether the doubt exist as to the nature of the injurious occurrence or the sufficiency of the cause assigned.

To apply the rule: If we doubted whether sea water got into No. 4 through the hatchway, or coal dust into the cargo space of No. 2 through the bulkhead, that doubt would give decision to the cargo owner; we are not so doubtful, but if we further doubted whether the hatch coverings leaked and the bulkhead opened solely because of an elemental force irresistible by human skill, that doubt would resolve the matter for libelant. Thus, even if we were not as fully satisfied on the facts as was the District Judge, his decision on the merits is right.

[4] As for the wetted tobacco in No. 2, the fact once established that it was wet by sea water, there being no further explanation (The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748), is decisive against the carrier. The decisions urged upon us by appellant (Gough v. Hamburg, etc. [D. C.] 158 Fed. 174; The Hyades, 124 Fed. 58, 59 C. C. A. 424) only, we think, illustrate the extremity of sea violence necessary to be proven with great clearness, in order to establish defense under the exception here relied on.

[5] The assignments of error based on proceedings before the commissioner we take up guided by our ruling in Appeal of Cahill, 124 Fed. 63, 59 C. C. A. 519, that, where the commissioner's findings have been reconsidered on exceptions and approved by the trial court, "they

should not be disturbed by this court, unless manifestly wrong." Being far from convinced that the commissioner was manifestly wrong on any issue of fact, we examine only the legal propositions argued. That the quantum of damage was not proved in accordance with law, and was too great anyhow, is really based on two legal propositions: (1) Expert opinion evidence of value was not admissible. (2) Error in opinion as to bales thought to be damaged over 10 per cent. invalidated similar testimony as to bales less severely injured.

[6] While the first proposition has in times past been the subject of much difference of opinion, it is settled in the United States courts that as a general rule opinion evidence on value is admissible (Montana Ry. v. Warren, 137 U. S. 352, 11 Sup. Ct. 96, 34 L. Ed. 681), and we regard Clark v. Baird, 9 N. Y. 183, as a well-considered decision to the same effect. Perhaps no opinion has been more persuasive than that of Story, J., in Alfonso v. United States, 2 Story, 421, Fed. Cas. No. 188. And see Buckley v. United States, 4 How. 251, 11 L. Ed. 961.

[7] But this proceeding is in admiralty, and we "are not bound by all the rules of evidence which are followed in the courts of common law, and * * * may, where justice requires it, take notice of matters not strictly proved." The Boskenna Bay (D. C.) 22 Fed. 667, not changed as to this point by (D. C.) 40 Fed. 96. And see, for the general rule, Ben. Adm. (4th Ed.) § 437, citing cases. It is to be remembered that, had libelant sent all injured bales to sale as damaged, loss would have ensued greater than the recovery allowed below; but respondent could, and doubtless would, have charged that the good and bad tobacco was "easily separable" (The Boskenna Bay [D. C.] 36 Fed. 699), and complained that no division had been made.

[8] It is now proven that such physical separation was slow and expensive, and we can imagine few cases better than this for reliance on expert opinion. Among marine causes The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937, affords an extreme example of the admissibility of opinion evidence, which may be used to impeach as extravagant even actual expenditures (The Mason, 249 Fed. 721, 161 C. C. A. 628), or to prove as damages repairs never made (The William E. Ferguson, 108 Fed. 984, 48 C. C. A. 173). As against a carrier at common law, St. Louis, etc., Ry. v. Edwards, 78 Fed. 745, 24 C. C. A. 300, is notable. The evidence there was, we think, sufficient; in kind it was like that at bar; in degree, far less persuasive.

[9] As for the second branch of this argument, it is scarcely a question of law, unless there be required a ruling (which we make) that a mistake as to the amount of damage on five packages does not require rejection of the same witnesses' testimony as to the damage in five other packages. In a wide sense of the word, the matter is one of credibility, and goes to the jury (if there is one) with the other facts. We are of the opinion that the probability of error as to the slightly damaged goods was much less than in respect of the very wet bales; but the question is of fact, and the result not "manifestly wrong."

[10] In considering this question of opinion evidence as to amount of lost tobacco (for all thoroughly wet leaves were worthless) it is to be remembered that the men who gave evidence based their opinions on what they learned at a survey, of which claimant had notice, in which it declined or neglected to take any part, and which the libelant's insurers conducted. If no notice had been given claimant, our remarks in The Westchester, 254 Fed. 576, 166 C. C. A. 134, would have been applicable. As it was, claimant was bound to know that surveys of damage in marine matters are held for the purpose of ascertaining what damage has been done, not to discover or award blame for the loss. The notion, apparently acted on by this claimant, that any investigation into quantum and kind of damage is something like an admission of liability therefor, is error.

We do not hold that any party must join in a survey, but we think him ill-advised not to do so; for he has deliberately omitted to gain knowledge, and cannot complain when the attending parties use the knowledge they obtain to his disadvantage. We are aware that the surveyors who testified here were not qualified because they surveyed, but because they were experts in tobacco and its value, but think that claimant has brought on itself great expense by not attending, for it would have been apparent how persuasive were the methods pursued by the subsequent witnesses. Dr. Lushington's remarks, quoted in The Mason, 249 Fed. 720, 161 C. C. A. 628, are exactly applicable to the situation so often produced by parties refusing to avail themselves of the opportunity for information afforded by a survey.

[11] We have no doubt that the invoice value was well proved. Much has been said of "consular invoices." The documents were evidence, not because they had or had not some consul's certificate attached, or merely because they came from the files of a branch of the Treasury Department (see Cohn v. United States, 258 Fed. 355, 169 C. C. A. 371), but because by many congressional acts and departmental rulings a true invoice, verified by oath, is made the basis for lawful entry into this country of most imported merchandise (see Index of Custom House Regulations, sub. nom. "Invoices," for references). The safeguards thrown by fear of detection and personal punishment and confiscation of goods around the invoice, which usually represents the goods for customs purposes, are so great that any reasonable man would look with greater confidence on the document brought from the custom house files than on one produced from a private desk.

This very obviously comes within the generous and sensible rule of admiralty, above quoted, especially as invoices are commercial documents. For an example of the respect accorded even "custom house weights," see Linklater v. Howell (D. C.) 88 Fed. 526.

The appellee has asked us to consider and award certain items not allowed as damages below. We think the rule of Cahill's Appeal, supra, applies to them, and affirm the decree as rendered, with interest and costs.