## THE JAY ST. TERMINAL NO. 3.

(Circuit Court of Appeals, Second Circuit. March 27, 1922.)

No. 215.

Shipping ⬅︎141(1)—Exception in bill of lading of loss from collision held effective, where barge was seaworthy and owner not negligent.

> Loss of cargo by sinking of seaworthy barge through collision, without fault or negligence of the owner, *held* within a provision of the bill of lading excepting loss or damage resulting from collision.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Jewell Tea Company against the barge Jay Street Terminal No. 3, and others, with John Barton Payne, Director General of Railroads, impleaded. Decree for respondents (281 Fed. 275), and libelant appeals. Affirmed.

Libelant delivered to the Jay Street Terminal, owner of barge No. 3, a large quantity of coffee, expecting it to be transported by the Terminal (a partnership) from certain piers in Brooklyn to one of the vessels of the Southern Pacific Company, laden on said vessel, and carried to New Orleans. The coffee was accordingly loaded on barge No. 3, which proceeded to Pier 48, North River, the Terminal having issued for the coffee a bill of lading in and by which transport was promised from Brooklyn to New Orleans. This bill was issued April 16, 1919, and on the same day, at about 10:30 p. m., the barge arrived at Pier 48 and was there made fast to the barge Haverstraw, which lay on the south side of the pier, while outside of the No. 3 lay No. 11, another barge belonging to the Terminal.

In this position the barges lay during the night of April 16, 1917. There is no direct evidence of any collision or other mishap during the night, but at about 5 a. m. of April 17th the captain of No. 3 observed his boat suddenly and heavily listing, and she shortly thereafter sank. No. 3 is a covered scow, and her cargo of coffee was in the deck house. This prevented her dumping her cargo, and caused her to sink as far as her wooden structure and the depth of water would permit, but she actually lay on her bilge.

This action is in rem against the No. 3, and in personam against her owners, the Southern Pacific Company and the Director General of Railroads. Considering the disposition to be made of this case, it is not necessary to explain the connections, actual or alleged, between the three individual respondents. The trial court dismissed the libel, and libelant appealed.

John A. McManus, Thomas J. Healy, and Duncan & Mount, all of New York City, for appellant.

Leonard J. Matteson, of New York City, Richard F. Shaw, of Syracuse, N. Y., and Bigham, Englar & Jones, of New York City, for the Jay St. Terminal No. 3 and her owners.

Robert S. Erskine, Harry D. Thirkield, and Kirlin, Woolsey, Campbell, Hickox & Keating, all of New York City, for Southern Pac. Co. and Director General.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The possible liability of the parties sued in personam does not require discussion nor opinion, because it must be admitted that, if the barge is not

liable in rem, no responding party is liable. Nor is it profitable to inquire whether the shipment was with a special or general carrier, for the owners of the barge issued and libelants accepted a bill of lading, expressing the contract between shipper and carrier, no matter of which kind. That bill of lading contains the exception that—

"No carrier shall be liable for any loss or damage resulting from * * * unseaworthiness, or from collision * * * or other accidents of navigation."

It is also not necessary to consider whether the exception against unseaworthiness ever can be valid, especially in respect of a common carrier. In the court below the claimant accepted the burden of affirmatively proving seaworthiness, and we consider the case as if no attempt had been made to lessen or avoid the usual liability of a marine carrier in respect of that quality. Admitting then that the unexplained sinking of a vessel in her berth raises a presumption of unseaworthiness (The K. B. Guinan, 176 Fed. 301, 99 C. C. A. 639, and cases cited), and that unseaworthiness would impose liability, we are of opinion that it was clearly shown that the No. 3 was entirely seaworthy when she started on the voyage in question.

As for the exception against collision, the libelant can ask no more generous construction than was accorded in the court below, viz. that it was worthless, if loss was caused or brought about by shipowners' negligence. Carver (6th Ed.) § 93. The question debated in both courts is whether the sinking was in fact due to collision, and whether there ever was any collision.

We have noted that there is no direct evidence of collision, and the one man who constituted No. 3's crew went to bed and slept through the night, while his boat lay between Haverstraw and No. 11. He was awakened by a clock falling from a shelf and on his head, and such fall was occasioned by the heavy list of his vessel. Subsequent investigation showed a V-shaped hole in sound timbers forming a well-caulked side, and the No. 11 also (a boat proved sound the day before) showed broken timbers and had the appearance of having been squeezed. The hole in No. 3 was just at the load water line, so that the inflow of water might and probably would have been slight at first, growing rapidly as the boat sank lower.

In our opinion, the evidence, though circumstantial, is credible and persuasive that the injuries to both Nos. 11 and 3 were caused by extraneous pressure on No. 11, and such pressure could only have been inflicted by another vessel entering or leaving the slip during the night.

We have merely outlined the evidence; it is satisfactorily discussed in detail in the opinion of L. Hand, D. J. Result is that we consider all causes other than collision excluded by the evidence, and that the carrying vessel has borne the burden of proof defined in The Rosalia, (C. C. A.) 264 Fed. 285, 288.

Loss having resulted from a collision, injuring a seaworthy vessel, and without negligence on the carrier's part, the matter falls within the exception, and the decree below is affirmed, with costs.