## CONNECTICUT FIRE INS. CO. v. LAKE TRANSFER CORPORATION et al.

### No. 12303.

District Court, E. D. New York.
Dec. 26, 1933.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for libelant.

Burke & Desmond, of Buffalo, N. Y., for respondent Lake Transfer Corporation.

Duncan & Mount, of New York City, and Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y., for respondent-impleaded, Hanna Furnace Corporation.

GALSTON, District Judge.

The respondents filed exceptions to the commissioner's report which awarded the libelant damages of $3,219.98, with interest from February 28, 1931.

The pivotal question involved is the measure of damages.

As appears from the interlocutory decree (D. C.) 60 F.(2d) 172, the libel was brought by the Connecticut Fire Insurance Company, as assignee of the Seaboard Great Lakes Corporation. This latter corporation was the carrier. The Niagara Sprayer & Chemical Company, the consignee of a certain shipment of sulphur, refused to accept a barge load forming part of the shipment. Two previous barge loads handled by the respondents had been found so contaminated with iron ore that serious fires resulted. At the trial it was held that the consignee was justified in rejecting the third barge load, and that the respondents were liable for damages caused by their negligence.

It was stipulated that the fair and reasonable market value of a cargo of sulphur at Buffalo in sound condition was $23.60 a gross ton. It was also stipulated that the barge load in question had been sold to the Pennsylvania Salt Manufacturing Company for the price of $19 a gross ton at Buffalo. The commissioner found that the libelant was entitled to the difference between the contract price, which was the fair market value of sulphur in sound condition at Buffalo, and the sale price.

This rule of estimating the damage, the respondents urge, is erroneous. They contend that the proper measure is the difference between the contract price and the fair market price of the sulphur, and that, in consequence, the libelant is entitled to nominal damages only.

The circumstances present a very unusual situation. The Freeport Sulphur Company consigned a cargo of sulphur to the Niagara Sprayer & Chemical Company at Middleport, N. Y. The consignee was to pay monthly for such amounts thereof as it used. Therefore it was not a cargo destined for resale in the market, but for consumption by the consignee. Whether the measure of damages be for breach of contract of sale or for damages caused by negligence is of no great moment for there was not an open market for the buying and selling of sulphur at Buffalo. There are only two companies in the world which produce sulphur. Neither one attempts to sell to the customers of the other. Not only was the Freeport Sulphur Company thus limited in its efforts to resell the cargo in question, but clearly the sulphur could not be offered for sale free from the cloud of its rejection by the consignee. It became, irrespective of the fact as to whether it was sound, distressed sulphur. Sulphur is a commodity that is sold on a basis of almost absolute purity running as high as 99.1 per cent. pure, and for that reason buyers are not willing to overlook contamination.

So in offering this particular cargo it became necessary to disclose to the prospective purchasers that the cargo had been refused by the consignee, and also the reason for the refusal.

The number of possible users in the Buffalo area was very limited. The Freeport Sulphur Company offered it to four companies, and the only bid received was from the eventual buyer, the Pennsylvania Salt Manufacturing Company located at Natro-

na, Pa. Obviously, the seller could not get the same price for sulphur under suspicion as for sound sulphur.

Another different and unusual circumstance is that each sulphur consumer is bound by his contract with the producer for his complete requirements for the year, and is not free to buy from others. To be relieved of such restriction, special permission had to be granted by the seller corporation in each case. However, that practice was discontinued prior to 1930 and, therefore, has no bearing in the circumstances of this libel.

The respondents, as the commissioner found, offered no evidence of the value of the rejected sulphur. From the foregoing, it must appear that there was no open market for sound sulphur, and certainly not for distressed sulphur. The damages must, therefore, be ascertained in some rational way. The resale at $19 per ton is competent evidence of the fair market value of the rejected sulphur in its then condition at Buffalo. United S. S. Co. v. Haskins (C. C. A.) 181 F. 962; The President Arthur (D. C.) 28 F.(2d) 391; The Rosalia (C. C. A.) 264 F. 285. And as is said in Ruling Case Law, vol. 8, page 489: "In case there is no local market, the value is properly fixed by the value at the nearest market, deducting the cost of transportation."

Accordingly, the exceptions are overruled. Settle order on notice.